IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 16, 2000

## KENNETH L. BONNER v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Davidson County**
**No. 2656-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M1999-00343-COA-R3-CV - Filed August 17, 2001**

---

The petitioner contends that the trial court erred in dismissing his petition regarding the Department of Correction's calculation of his release eligibility date.  An adjustment of the release eligibility date, made subsequent to the filing of this appeal,  has rendered most of the petitioner's arguments moot.  As to the remaining issue, we affirm the dismissal of the petition because we agree with the trial court that it lacked jurisdiction to consider the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., J., joined.

Kenneth L. Bonner, Mountain City, Tennessee, Pro se.

Paul G. Summers, Attorney General, Michael Moore, Solicitor General, Pamela S. Lorch, Assistant Attorney General, for the appellee, Tennessee Department of Correction.

## OPINION

The petitioner, Kenneth L. Bonner, is an inmate in the custody of the Tennessee Department of Correction ("the Department").  He pled guilty and was sentenced in 1984 to the following: life imprisonment for first degree murder, ten years for grand larceny, eight years for writing a bad check, and two years for forgery.[1]  The sentences are consecutive.  Mr. Bonner must first serve the life

---

[1]The Department's brief does not mention the forgery conviction or sentence, although an affidavit filed by the Department below recites that Mr. Bonner was sentenced to a minimum of two years and a maximum of two years for forgery on the same date that his other sentences were imposed.  Mr. Bonner's petition includes this two-year forgery sentence.

sentence, then the ten year sentence for grand larceny, then the eight years for bad checks, followed by the two year forgery sentence.

The petitioner contends that his release eligibility date ("RED"), the earliest date he might be considered for parole, was originally calculated as February 21, 2017, "30 years on the life sentence; 4 years combined time on the remaining sentences." He claims the Department extended his release eligibility date in 1986 by adding two years; in 1989 by adding nine years "for a disciplinary conviction of assault;" and in 1992 by "re-extending the release eligibility date that had already been extended." The petitioner contends that the 1986 and 1992 extensions were illegal "in the sense that [he] had not received any type of disciplinary convictions that called for or mandated extension to his release eligibility date."

The petitioner filed a "Petition for Common Law Writ of Certiorari and/or Petition for Judicial Review" in the Chancery Court in Davidson County, "pursuant to Tennessee Code Annotated 27-8-101, 27-8-102, and 4-5-322." The Department responded with a Motion for Summary Judgment, asking the court to "enter summary judgment in [the Department's] favor and dismiss this petition for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted." Attached to the motion for summary judgment were a statement of undisputed facts[2] and the affidavit of a sentence analyst of the Department of Correction.

The trial court granted the Department's motion on three grounds: 1) the petition for writ of certiorari regarding the imposition of the 30% extension of his RED was time-barred, depriving the court of jurisdiction over the matter; 2) the petitioner's alternative petition under Tenn. Code Ann. § 4-5-322 could not be considered because this was not a "contested case" pursuant to Tenn. Code Ann. § 4-5-106(b); and 3) the petitioner erroneously claimed that the 30% extension of his release eligibility should have been calculated on only one of his sentences when, pursuant to statute, the 30% extension applies to each separate sentence.

The petitioner filed a motion to consider post-judgment facts, which this court granted after the Department responded that it did not object to our consideration as long as Mr. Bonner did not rely on those facts to raise new issues before this court. The petitioner's motion stated:

> The respondent in this cause of action modified the release eligibility date of the appellant from 12/23/2050, to reflect a new RED date of March 12, 2016. A copy of said action is hereto annexed as Exhibit A. The appellant further contends that he still has a cause of action in that his release eligibility date remains incorrect.

The attached "Exhibit A" is a photocopy of a letter from the manager of Sentence Information Services of the Department of Correction to the petitioner's wife. The letter states in part:

---

[2]Mr. Bonner responded to this statement by disputing most of the facts or explaining why they were not applicable to his claims.

Effective June 7, 1999, your husband's record was modified[3] to reflect a one-year RED extension. The modification was approved by Commissioner Campbell, and replaced the original extension due to the guilty verdict for assault in July, 1989. The current release eligibility date (RED) is March 12, 2016. This date will reduce each month credits are earned and retained. When your husband reaches a time-frame for parole consideration, his name will be submitted to the Board of Parole. He is not eligible at this time.

The one-year RED extension has been applied to the Life sentence only, even though the sentence structure reflects a string of consecutive sentences, for which the summary RED is based.

Despite this significant reduction in his release eligibility date after the trial court entered its order, the petitioner pursues his appeal, alleging that his RED is still incorrectly calculated.

## I. Calculations of the Release Eligibility Date

Mr. Bonner's original complaint was that his RED had been extended three times, in 1986, in 1989, and in 1992 while there was a legitimate basis for only one extension. His petition makes it clear that the last two extensions were related to his conviction by a disciplinary board for assault on a guard. He did not contest the merits of that disciplinary finding or the authority of the commissioner to extend a release eligibility date by up to thirty percent (30%) for such a violation of Department rules. He challenges the way the Department calculated the 30% extension in 1992, and the 1986 calculation of the RED.

### A. The 1992 Calculation

In the affidavit submitted in support of its motion for summary judgment, the Department explained the extension due to the disciplinary violation as follows:

On July 17, 1989, Mr. Bonner was found guilty by the disciplinary board of Assault on an Employee, which occurred on July 4, 1989.

Per Policy 502.02(F, G) the release eligibility date (RED) was to be extended by thirty percent (30%) of the maximum sentence the offender was serving at the time of the infraction. Due to the fact that Mr. Bonner is serving consecutive sentences, the RED was extended on each sentence. His Life sentence was extended by thirty percent (30%) of 99 years (29 years 8 months 12 days); 10-year sentence (3 years); and his 8-year sentence (2 years 4 months 24 days).

---

[3]The letter contained no explanation for the modification. Under Tenn. Code Ann. § 40-35-501(k) and TDOC Policy 502.02, the Commissioner has discretion to extend release eligibility up to the maximum for the specific violation found.

His current probable parole date is March 25, 2051.

This explanation relates to the 1992 extension complained of by Mr. Bonner, who makes several arguments regarding the method by which the Department applied the 30%. Both Mr. Bonner and the Department rely on Tenn. Code Ann. § 40-35-501(j), which requires computation of release eligibility for consecutive sentences on one cumulative sentence. That statute provides:

> The release eligibility date provided for herein is separately calculated for each offense for which a defendant is convicted. For consecutive sentences, the periods of ineligibility for release are calculated for each sentence and are added together to determine the release eligibility date for the consecutive sentence.

Mr. Bonner argues that the Department's application of a thirty percent extension to each of his consecutive sentences was contrary to this statute and thus not authorized by law. He appears to argue that the 30% should have been added to his cumulative sentence, when instead the Department calculated and added the 30% to each of his separate consecutive sentences to arrive at one new RED.[4] We fail to see how that distinction makes a difference. Thirty percent of the total sentence (life plus 10 years plus 8 years) is the same as 30% of life plus 30% of 10 years plus 30% of 8 years. In any event, we find no irregularity in the methodology employed by the Department, as explained in its affidavit, because it complies with Tenn. Code Ann. § 40-35-501(j) and with § 40-35-501(k), which authorizes the commissioner of correction, for violation of the rules of the Department, to defer a release eligibility date in any amount not to exceed the full sentence originally imposed by the court, pursuant to regulations giving notice of the length of increases possible for each violation. The regulation in effect at the time of the 1989 assault authorized adding "30% of the offender's original maximum sentence." The trial court correctly found that the 30% extension was properly calculated.

Mr. Bonner also asserted in the trial court that the 1992 changes to his RED were made as a result of the Department's implementation of a new computer system and "doubled back" and added 30% extensions to sentences which had already been extended in 1989 because of the assault. The affidavit indicates that one extension of thirty percent (30%) was made due to the assault finding. The 1992 extension, as described by Mr. Bonner, reflects the extensions which are explained in the affidavit.

Mr. Bonner's basic argument in this regard is that there was no basis, such as a new rule violation, for the 1992 extension. The Department does not assert that there was. Instead, the Department does not acknowledge there was an extension other than the 30% extension in July 1989.

---

[4] The Department and the trial court interpreted this argument as a contention that the 30% increase in his RED should have applied only to the life sentence and not to the other sentences. Regardless of the correct interpretation of Mr. Bonner's position, the answer is the same: release eligibility is computed on the cumulative consecutive sentences. The Commissioner has discretion to extend, for certain rule violations, the release eligibility date "in any amount not to exceed the full sentence originally imposed by the court" as long as such extension is done in compliance with the Department's regulations. Tenn. Code Ann. § 40-35-501(k).

The record includes the disciplinary report authorizing a 30% extension of Mr. Bonner's RED, and the affidavit indicates that is the basis for the extension of Mr. Bonner's RED.

The problem, as it appears to us, is that the Department provided Mr. Bonner with a computation in 1989 purporting to be a 30% extension which reflected an incorrect number of years (9) to be added to his RED. To the extent that Mr. Bonner's complaint is based on documentation he received in 1989 that incorrectly calculated the extension due to the disciplinary infraction, we find no basis for requiring the Department to change its correct application of the extension.

In the trial court, Mr. Bonner also argued that the Department had improperly applied the 30% extension to his two year sentence for forgery. He asserts that the 30% extension could not be applied to his 2-year forgery conviction because that offense was committed prior to enactment of the statute authorizing extension of parole eligibility for prison disciplinary offenses, Tenn. Code Ann. § 40-35-501. Such application, he contends, would violate the ex post facto clause.

As he correctly points out, the Department did not directly address this issue. However, the Department's affidavit clearly states that the 30% extension was applied to the murder, grand larceny, and bad check sentences. Because the affidavit also recognizes the existence of Mr. Bonner's two year sentence for forgery, the clear implication is that no part of the 30% extension of his RED was related to the forgery sentence. However, attached to Mr. Bonner's filings are Department sentence reports which reflect that the two-year sentence for forgery carried a disciplinary extension of 30%.[5] The Department did not explain this discrepancy in its documentation supporting its motion for summary judgment.

On appeal, but not raised in the trial court, Mr. Bonner also complains that the Department incorrectly applied the 30% extension to a 99 year sentence, when it should have used 60 years as the presumptive term of a life sentence pursuant to Tenn. Code Ann. § 40-35-109(d)(1). Although not directly responding to the statutory issue raised by Mr. Bonner, the Department has bolstered its calculation of the 30% extension by relying on Department policies relating to extensions of parole eligibility for rule violations which result in injury to employees. The relevant portion states that for purposes of calculating an extension, "a life sentence shall be considered ninety-nine years." TDOC policy 502.02(G).

All of the preceding arguments raised by Mr. Bonner have been rendered moot by the Department's action replacing the 30% extension with a one-year extension of his RED. Because Mr. Bonner asked us to consider this action as a post-judgment fact, it is properly before us for determination of mootness. Mr. Bonner readily concedes that the Department had the authority to extend his RED up to 30% of his sentence if the Department applied that 30% correctly. Even if we were to agree with all his arguments, and order the Department to recalculate his RED accordingly, 30% of only his life sentence, calculated at 60 years as he maintains it should be, is 18 years. Obviously, a one-year extension is within the Department's authority even under Mr. Bonner's

[5]Another sentence report, dated earlier, indicates no such extension.

version of its authority. Therefore, we conclude Mr. Bonner's claims regarding extension of his RED based on his disciplinary violation are moot.

## B. The 1986 Calculation

Mr. Bonner's claim with regard to the 1986 calculation of his RED which he calls an "extension" is unaffected by the Department's recent modification of the RED. Mr. Bonner's complaint is that when he entered prison in 1984, he was given sentencing information, included in the record, which stated that his RED was February 21, 2017. Another document he submitted, a 1986 sentencing report generated by the Department, reflected his RED as June 6, 2019. It is this change that Mr. Bonner characterizes, understandably, as an "extension." No explanation for this change appears on the Department's documents filed by Mr. Bonner. The Department did not address this issue in its motion for summary judgment or on appeal. The Department's affidavit explains Mr. Bonner's original sentence and the application of the 30% extension, and provides a conclusory statement as to his correct RED. However, the affidavit does not disclose the original RED as calculated by the Department. Without the starting point for application of the extension, this court has no basis for determining the accuracy of the Department's conclusion as to his RED.

Even though the record provides no basis for us to determine, as a matter of law, whether Mr. Bonner's RED has been calculated correctly, the specific complaint he raises, the 1986 "extension," can be explained by the record. The first sentence calculation document provided to Mr. Bonner, under the section for calculation of his RED, indicated that he was required to serve 30 years on his life sentence and 4 years on all other sentences before becoming eligible for parole consideration. The next document submitted by Mr. Bonner indicates his parole eligibility for the sentences consecutive to the life sentence was based on 35% of the 10 year sentence, 35% of the 8 year sentence and that he was required to serve two years on the forgery conviction before becoming eligible for parole. The Department's affidavit is consistent with these statements.[6] Obviously, this information would indicate that the original calculation using 4 years for all sentences other than the life sentence for calculation of the RED was incorrect.

The Department is required to calculate sentences in accordance with the sentencing court's judgment and with applicable sentencing statutes. Tenn. Code Ann. § 40-35-501; *see State v. Shelton*, No. E2000-01632-CCA-R3-CD, 2000 WL 1858996, at *7 (Tenn. Crim. App. Dec. 20, 2000) (perm. app. denied Apr. 9, 2001) (remanding for correction of record "so that the Department

---

[6]In 1984, when the petitioner was sentenced, he was apparently credited for his "jail time" awaiting trial. Thus, his sentence had the "effective date 2/21/83." He was sentenced to life in prison, and required to serve thirty years before he was eligible for parole. He was also sentenced to two years for forgery and required to serve the entire sentence. He was to serve 35% of his convictions for grand larceny (ten years) and bad checks (eight years) before he was eligible for parole. Thus, according to our calculations at the time of sentencing, the petitioner was to serve more than thirty eight years before his RED ($30 + 2 + 3.5$ (35% of 10) $+ 2.8$ (35% of 8) $= 38.3$ years). The affidavit filed by the Department does not provide the calculation for his RED at his entry into prison. Because an RED can be reduced by various sentence reduction credits, the Department's statement of Mr. Bonner's current RED does not provide the information necessary for us to calculate the original RED.

of Correction will be able to properly calculate the release eligibility date). Therefore, the Department cannot be required to alter correct sentence calculations because information based on an incorrect calculation has been provided to the prisoner. Conversely, a prisoner is not precluded from seeking correction of a Department mistake which incorrectly prolongs his RED. As we have stated, the courts' interest in sentence calculation issues is simply "in seeing to it that the law is properly applied." *Jones v. Reynolds*, No. 01A01-9510-CH-00484, 1997 WL 367661, at *7 (Tenn. Ct. App. July 2, 1997) (no Tenn. R. App. P. 11 application filed).

## II. Jurisdiction to Consider the Claims

The trial court granted the Department's motion for summary judgment based on its lack of jurisdiction and its determination that the petition failed to state a claim. A trial court's grant of a motion for summary judgment presents a question of law that we review *de novo* without a presumption of correctness. *Finister v. Humbolt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn. 1998). The questions a court must consider in determining whether to grant or deny a motion for summary judgment are: (1) whether a factual dispute exists; (2) whether that fact is material; and (3) whether that fact creates a genuine issue for trial. *Byrd v. Hall*, 847 S.W.2d 208, 214 (Tenn. 1993). "A disputed fact is material it if must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Id*. at 215. Summary judgment shall be denied if there is "any doubt whether or not a genuine issue exists." *Id*. at 211. Thus, a summary judgment should be granted only when the undisputed facts reasonably support one conclusion - that the moving party is entitled to a judgment as a matter of law. *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

Mr. Bonner contends that the Department was not entitled to judgment as a matter of law and that the trial court misconstrued his argument when it determined that he petitioned for a writ of certiorari regarding the 1989 extension in his RED. Instead, he asserts that he challenged the 1986 and 1992 "illegal increases" in his RED.[7]

A challenge to a disciplinary board decision is properly brought through a petition for common law writ of certiorari. *Bishop v. Conley*, 894 S.W.2d 294, 296 (Tenn. Crim. App. 1994). The trial court construed Mr. Bonner's petition as a challenge to the 30% extension for the 1989 disciplinary action, and concluded that the petition was time barred. As the trial court found, Tenn. Code Ann. § 27-9-102 provides a sixty (60) day statute of limitations for such actions. Mr. Bonner's petition was obviously filed years after the 1989 determination of the disciplinary board. Consequently, the trial court dismissed the petition for writ of certiorari. To the extent Mr. Bonner's petition can be construed as seeking judicial review of the 1989 disciplinary finding, we agree it is time barred.

---

[7]In fact, the petition in the trial court stated, "[T]he petitioner . . . does not seek judicial review of the respondent's decision to extend his release eligibility date, but does contest the illegal manner in which the respondent [has] extended his release eligibility date. . . ."

The trial court also determined that the petition must be dismissed because Tenn. Code Ann. § 4-5-322, relied on by Petitioner, applied only to contested case proceedings under the Administrative Procedures Act (APA). We agree that the statute cited did not provide Mr. Bonner with a mechanism for judicial review. However, another section of the APA was appropriate for Mr. Bonner's claim. *See* Tenn. Code Ann. § 4-5-223. Mr. Bonner maintains that his RED has been incorrectly calculated. He specifically questions the change reflected on the document dated September 17, 1986, which appears to extend his RED without any explanation. He contends he has continually asked for an explanation and has received none. The Department provided no explanation or other response to this claim in the lawsuit before us. It is settled that an inmate may seek judicial review of the Tennessee Department of Correction's calculation of the prisoner's sentence, including reduction credits, pursuant to Tenn. Code Ann. § 4-5-101 *et seq*, but that inmate must first seek a declaratory order regarding the sentence calculation from the Department. Tenn. Code Ann. § 4-5-225(b); *Watson v. Tennessee Dep't of Corr.*, 970 S.W.2d 494, 497 (Tenn. Ct. App. 1998); *see also Jones*, 1997 WL 367661, at *2 (the manner of calculation of prisoner's sentence, including credits, was subject to review by petition for declaratory judgment).

The plain language of Tenn. Code Ann. § 4-5-225 requires a petitioner to seek a declaratory order from the agency as a prerequisite to filing a petition for declaratory judgment with the court. Absent evidence that such an order was sought, the petition must be dismissed for lack of subject matter jurisdiction. *Watson*, 970 S.W.2d at 497. We find no indication that the petitioner ever sought a declaratory order from the Department regarding the calculation.[8] Thus, the trial court had no jurisdiction to consider the claimed "illegal increases" to Mr. Bonner's RED.

Regardless of whether the challenge is to the 1989 disciplinary action or to the apparent changes to calculation of the RED made in 1986 and 1992, we must agree with the trial court's dismissal of this action. *See Basily v. Rain, Inc.*, 29 S.W.3d 879, 884 n.3 (Tenn. Ct. App. 2000) ("We may affirm a judgment upon different grounds than those relied on by the trial court when the trial court has reached the correct result.").

III.

Mr. Bonner's petition was prompted by his concern over whether the Department has correctly calculated his release eligibility date, a matter of great importance to an incarcerated individual. This concern was apparently created by the Department providing him with documents which reflect inconsistent calculations and appear to change his RED without justification for the change. His petition reflects frustration with his inability to get the Department to explain these inconsistencies.

---

[8]Mr. Bonner mentions "petitioning the department for a declaratory order" in his brief; however his petition to the trial court and the record before this court contain no mention of such a petition.

Although, based on the record before us, we have no reason to conclude that his RED has been incorrectly calculated, that same record makes us sympathetic to Mr. Bonner's frustration. This court has previously discussed the problems caused by "the Department's preference for dilatory pleadings rather than direct responses to [a prisoner petitioner's] assertions." *Jones*, 1997 WL 367661, at *1. In *Jones*, we vacated, for the second time, a grant of summary judgment to the Department in an action wherein the prisoner challenged the Department's calculation of his sentence reduction credits. The result was required because the record did not include the specific information necessary for a determination of the issues. The Department had provided affidavits which reached different results, and never offered an explanation of the inconsistencies. Commenting on the fact that the Department had provided results without providing the calculations themselves, we stated, "this response is inadequate because it does not enable the courts to review in any meaningful way how the Department arrived at [its figure]." *Id.* at *7.

*Jones* involved sentence reduction credits, the calculation of which involves a large number of variables. Such is not the case herein, where establishment and extension of a release eligibility date, without reduction for earned sentence credits, is based on statute and documented administrative action. Nonetheless, neither the trial court nor this court was provided with the Department's explanation and result of its initial calculation of Mr. Bonner's RED. Neither have we been provided with an explanation of the inconsistencies appearing in the various documents prepared by the Department and given to Mr. Bonner. If, as we suspect, those inconsistencies were the result of plain mistake, that explanation is sufficient. Mr. Bonner has no right or legitimate expectation to any shortened RED calculation which does not comply with the law. While we cannot conclude that the time and expense of this litigation could have been avoided by a thorough explanation of the various documents provided to Mr. Bonner, we suggest that the Department provide such an explanation if it has not previously done so. Mr. Bonner is not precluded from seeking a declaratory order regarding his sentence calculation in the future.

IV.

We affirm the trial court's grant of summary judgment to the Department of Correction. This case is remanded for such further proceedings as may be necessary. Costs are taxed to the appellant, Kenneth L. Bonner, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE

-9-