IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned January 31, 2003

## WILLIAM WATERS, JR. v. TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 00-1840-III     Ellen Hobbs Lyle, Chancellor**

---

**No. M2002-00917-COA-R3-CV - Filed July 24, 2003**

---

A prison disciplinary board found a prisoner guilty of assault, and sentenced him to punitive segregation. The prisoner filed a Petition for Writ of Certiorari, contending that there was no evidence that he had initiated an assault, and that the disciplinary board had ignored evidence that he was actually defending himself from a potentially deadly assault from another prisoner. The trial court found the disciplinary board's action to be arbitrary, and reversed the conviction. The State argues on appeal that the trial court's action was improper, because it should simply have ordered that the record be sent up for further consideration. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN, J., joined. WILLIAM C. KOCH, JR. filed a concurring opinion.

William R. Waters, Jr., Only, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter; Stephanie R. Reevers, Associate Deputy Attorney General, for the appellant, State of Tennessee.

### OPINION

### I. AN INCIDENT OF ASSAULT

William Waters, Jr. is a prisoner at the Turney Center Industrial Prison and Farm, operated by the Tennessee Department of Correction. According to his petition, an inmate identified only as D. Larkins, #221249, was known to have stolen several cartons of cigarettes from other inmates on February 4, 2000.

The following day, Mr. Larkins came into Mr. Waters' cell armed with a knife, ordered Mr. Waters' cell mate out of the cell, "demanded to know where the jewelry, etc., was," and threatened

Waters with the knife. Taking advantage of a distraction, Mr. Waters rushed Mr. Larkins, grabbing the hand with the knife in it, as Larkins hit him in the face and head with his other hand. Waters gained possession of the knife, and Larkins was wounded in the scuffle.

Mr. Larkins subsequently signed a statement in the presence of two correctional officers, in which he stated that the injuries he received were the result of his own acts in starting a fight with Mr. Waters, and that Waters was simply defending himself. Nonetheless, a disciplinary report was filed against Mr. Waters. No report was filed against Larkins.

A disciplinary hearing resulted in a finding that Mr. Waters was guilty of assault. He was sentenced to ten days punitive segregation, and was ultimately placed in involuntary administrative segregation. According to Mr. Waters, the disciplinary panel failed to consider any exculpatory evidence, failed to examine his institutional record and that of Mr. Larkins, which allegedly would have revealed that there were no prior disciplinary proceedings against Mr. Waters, while Mr. Larkins had an extensive history of assaultive behavior, and failed to allow other inmates to testify as to the struggle between the two.

Mr. Waters appealed his conviction to the warden, and then to the Commissioner of Correction, both of whom affirmed the action of the disciplinary board. After exhausting his administrative appeals, Mr. Waters filed a Petition for Common Law Writ of Certiorari in the Davidson County Chancery Court on June 13, 2000. He claimed that the disciplinary board had deprived him of due process, and that it acted arbitrarily in convicting him of assault.

## II. PROCEEDINGS IN THE TRIAL COURT
## A. THE MOTION TO DISMISS

The Department of Correction, acting through the office of the Attorney General, filed a Motion to Dismiss Mr. Waters' petition for failure to state a claim, *see* Tenn. R. Civ. P. 12.02(6), and for lack of jurisdiction. Because of an error in its transcription of his TDOC inmate number, the Attorney General's office apparently failed to serve Mr. Waters with its Motion to Dismiss, and the petitioner was therefore unable to file a response to the motion.

Nonetheless, the Chancery Court considered Mr. Waters' petition, and dealt with his two theories separately. In a Memorandum and Order, filed January 3, 2001, the chancellor granted the Motion to Dismiss the due process claim, reasoning that under the authority of *Sandin v. Connor,* 515 U.S. 472 (1995) an inmate has no liberty interest in remaining free from punishments that do not impose an "atypical and significant hardship on the inmate in relation to the normal incidents of prison life." 515 U.S. at 486. Therefore, the court reasoned, he has no right to be accorded due process before such punishments can be imposed.

But the chancellor also denied the state's motion in part. She held that Mr. Waters had stated a claim by alleging that the disciplinary board had acted arbitrarily and illegally within the meaning of the writ of certiorari, by convicting him of assault without any evidence to support the conviction. The court accordingly ruled that this claim remained pending.

Thereafter, the Attorney General's office appears to have lost interest in the case, for they filed no other documents aside from a response to the petitioner's motion for relief from the chancellor's Memorandum and Order, in which they apologized for their error in service, and stated they had no objection to reconsideration of their Motion to Dismiss with any response that Mr. Waters chose to make.

The court accordingly granted Mr. Waters' motion, and vacated its Memorandum and Order of January 1, 2001. Mr. Waters then filed a Response to the Motion to Dismiss and an Amended Complaint. In both of those documents, he argued that the punitive and administrative segregation he was subjected to did place an "atypical and significant hardship" upon him, because the consequences of eighteen months of segregation included the postponement of parole hearings, the loss of sentence credits, the loss of access to law library services, the denial of religious services, and being locked up 23 or 24 hours every day.

The court reviewed Mr. Water's filings, and filed a new Memorandum and Order on May 16, 2000. The new order declared that nothing in Mr. Waters' response gave the court cause to alter its reasoning or change the conclusion found in its original order. The court copied the text of its previous Memorandum and Order of record into its new order verbatim.

### B. THE MOTION FOR SUMMARY JUDGMENT

William Waters filed a Motion for Summary Judgment on November 26, 2001, accompanied by a Statement of Undisputed Facts. *See* Tenn. R. Civ. P. 56.03. In his motion, he pointed out that the respondent had not filed a defense to his pending claim, as is required by Tenn. R. Civ. P. 12.08. He cited *Castelli v. Lien*, 910 S.W.2d 420, 429 (Tenn. Ct. App. 1995) for the proposition that "failure to assert a claim or defense in a timely manner is generally deemed to amount to a waiver of the right to rely on the claim or defense at trial."

In his Statement of Undisputed Facts, he again recited his version of the events of February 5, 2000, which characterized Mr. Larkins as the aggressor, and himself as acting only in legitimate self defense. The State did not file any response to the motion or to the Statement of Undisputed Facts.

On January 30, 2002, the trial court filed a Memorandum and Order in which it noted the State's lack of response to Mr. Waters' Motion for Summary Judgment, granted the motion, ordered that the writ be granted "on the grounds that the respondent acted arbitrarily, capriciously and in a manner unsupported by the evidence in light of the entire record," and ordered the reversal of Mr. Waters' disciplinary conviction.

On February 11, 2002, the Department finally acted, by filing a Motion to Alter or Amend the Judgment. *See* Tenn. R. Civ. P. 59. The respondent argued that the reversal of the disciplinary conviction was premature, because the record of the disciplinary board had not been brought before the court for review. The trial court rejected this reasoning and denied the Motion to Alter or Amend. The court's order stated that "[b]y failing to respond to the petitioner's summary judgment,

-3-

the respondent lost its right to file the record and for a full review of the record by the Court. By failing to respond to the summary judgment the respondent conceded that the full review was not necessary." This appeal followed.

## III. THE WRIT OF CERTIORARI

The only proper route for obtaining judicial review of a prison disciplinary proceeding is by filing a petition for a common-law writ of certiorari. *Bonner v. Tennessee Dept. of Correction,* 84 S.W.3d 576 (Tenn. Ct. App. 2001); *Robinson v. Clement,* 65 S.W.3d 632 (Tenn. Ct. App. 2001); *Bishop v. Conley*, 894 S.W.2d 294, 296 (Tenn. Crim. App.1994). The writ itself is not available as of right; the decision of whether or not to issue it lies within the discretion of the trial court. *Clark v. Metropolitan Government,* 827 S.W.2d 312 (Tenn. Ct. App. 1991).

The scope of review under the writ is limited. Once the petition is filed, the court examines the proceedings of the lower tribunal to determine if that body exceeded its jurisdiction, or acted illegally, fraudulently, or arbitrarily. *Turner v. Tennessee Board of Paroles*, 993 S.W.2d 78 (Tenn. Ct. App. 1999); *Yokley v. State*, 632 S.W.2d 123 (Tenn. Ct. App. 1981). A challenge to the intrinsic correctness of the inferior tribunal's decision is normally dismissed as being outside the purview of the reviewing court. *Hall v. McLesky*, 83 S.W.3d 752 (Tenn. Ct. App. 2001); *Powell v. Parole Eligibility Review Board*, 879 S.W.2d 871 (Tenn. Ct. App. 1994).

In the normal course of proceedings for certiorari, the petitioner will assert some fundamental illegality in the conduct of the proceedings before the inferior tribunal. If the trial court finds the petitioner's allegations compelling enough, it will issue the writ, and order the inferior tribunal to send up the complete record for review, so an accurate determination can be made. Tenn. Code Ann. § 27-9-109.

In the present case, the respondent did not make any effort to refute the allegations in Mr. Waters' Statement of Undisputed Facts, even though Tenn. R. Civ. P. 56.03 offers the non-moving party several ways to respond to such allegations of fact: the party can agree that the fact is undisputed, agree that it is undisputed for the purposes of the ruling on the motion only, or demonstrate that the fact is disputed. The non-moving party may also assert additional facts that are material, and which create a genuine issue to be tried.

It appears to us that a complete failure to respond to a Motion for Summary Judgment and to the Statement of Undisputed Facts appended to it amounts to a conclusive admission that the facts contained in the Statement are undisputed. This is the same result mandated by Tenn. R. Civ. P. 36.01, for a party's failure to file a timely response to a request for an admission under that rule.

The Department concedes on appeal that the trial court was justified in granting the writ, but argues that it erred in reversing the disciplinary conviction without first ordering that the complete record be sent up for review. The respondent contends that it is conceivable that the disciplinary board could have concluded that Mr. Waters used force disproportionate to the danger that Larkins

presented, that it could have disbelieved his self-defense claim entirely, or that it could have questioned Larkins' motivation for admitting that he was the aggressor.

But we believe the chancellor was justified in concluding that if the record contained evidence that would support such allegations, the respondent would have asserted the existence of such evidence during the summary judgment proceedings. Since it did not do so, the conclusion that the Board's decision was not supported by any evidence cannot be challenged now. A decision unsupported by any evidence is by definition arbitrary, and must be vacated.

**IV.**

The judgment of the trial court is affirmed. Remand this cause to the Chancery Court of Davidson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, the State of Tennessee.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.