# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### February 16, 2012 Session

## DANNY A. STEWART v. DERRICK D. SCHOFIELD, COMMISSIONER, TENNESSEE DEPARTMENT OF CORRECTION, ET AL.

**Appeal by permission from the Court of Appeals**
**Chancery Court for Davidson County**
**No. 10-457-II     Carol L. McCoy, Chancellor**
_____

**No. M2010-01808-SC-R11-CV - Filed May 25, 2012**
_____

We accepted this appeal to clarify the procedures an inmate must follow to dispute the determination of parole eligibility when the inmate is serving consecutive determinate sentences imposed pursuant to the Criminal Sentencing Reform Act of 1989 ("1989 Act"). See Tenn. Code Ann. §§ 40-35-101 to -505 (2010 & Supp. 2011). We clarify that the Uniform Administrative Procedures Act ("UAPA") governs an inmate's challenge to the Tennessee Department of Correction's ("TDOC") calculation of a release eligibility date. See Tenn. Code Ann. §§ 4-5-101 to -325 (2011). Under the UAPA, an inmate must request a declaratory order from TDOC before filing a declaratory action in court. Tenn. Code Ann. § 4-5-225(b). Petitioner failed to seek a declaratory order from TDOC; thus, the trial court properly dismissed his petition for common law writ of certiorari naming TDOC and TDOC officials. The UAPA does not govern an inmate's challenge to a decision of the Tennessee Board of Probation and Parole ("Board") concerning parole. Tenn. Code Ann. § 4-5-106(c). Rather, the petition for common law writ of certiorari is the procedural vehicle for bringing such challenges. See Tenn. Code Ann. § 27-8-101 (2000). While Petitioner also named the Board and Board officials in his petition for common law writ of certiorari, the trial court properly granted their motions to dismiss because the allegations of the petition fail to state a claim on which relief may be granted. The method for calculating release eligibility and custodial parole discussed in Howell v. State, 569 S.W.2d 428 (Tenn. 1978) is not applicable to inmates sentenced pursuant to the 1989 Act and serving consecutive determinate sentences for parole-eligible offenses. Accordingly, the judgment of the Court of Appeals is reversed, and the judgment of the chancery court dismissing the petition is reinstated.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of**
**Appeals Reversed; Judgment of the Chancery Court Reinstated**

CORNELIA A. CLARK, C.J., delivered the opinion of the court, in which JANICE M. HOLDER, GARY R. WADE, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, and Pamela S. Lorch, Senior Counsel, Nashville, Tennessee, for the appellants, Derrick D. Schofield,[1] Commissioner, Tennessee Department of Correction; Candice Whisman, Director, Sentence Calculation/Sentence Information Department; Tennessee Board of Probation and Parole; William Parsons, Director, Parole Hearings; and Charles Traughber, Chairperson, Tennessee Board of Probation and Parole.

James O. Martin, III, for the Appellee, Danny A. Stewart.

**OPINION**

**Factual and Procedural Background**

On October 28, 2002, Petitioner, Danny A. Stewart, pleaded guilty to thirteen drug-related offenses occurring between July 8, 1999, and April 15, 2000. Pursuant to the 1989 Act, the trial court sentenced Petitioner as a Range I offender on all counts, and ordered consecutive service of some sentences, for an aggregate sentence of forty-two years at thirty percent.[2] After receiving the trial court's judgment, TDOC calculated Petitioner's release eligibility date as March 8, 2010. On October 16, 2009, the Board conducted a parole hearing attended by Petitioner. The only issue presented to the Board was whether to release Petitioner from custody on parole.

---

[1] In accordance with Tennessee Rule of Appellate Procedure 19(c), Derrick D. Schofield, the current Commissioner of the Department of Correction, has been substituted for his predecessor, Gayle Ray.

[2] The record reflects that Petitioner pleaded guilty to thirteen drug-related charges in violation of Tennessee Code Annotated section 39-17-417. Specifically, the record reflects convictions on three counts of selling 0.5 grams or more of hydromorphone, a class B felony, for which the trial judge imposed concurrent sentences of ten years imprisonment. Consecutive to these sentences, the trial judge imposed terms of imprisonment—concurrent with one another—for convictions on the following five charges: conspiracy to sell fifty grams or more of hydromorphone (class A felony, twenty years); possession with intent to sell fifty grams or more of hydromorphone (class A felony, twenty years); felony possession of oxycodone (class C felony, four years); possession with intent to sell pethidine (class C felony, four years); and felony possession of diazepam (class D felony, three years). Finally, and consecutive to these sentences, the trial judge imposed terms of imprisonment—concurrent with one another—for convictions on five more charges: conspiracy to sell 0.5 grams or more of hydromorphone (class B felony, twelve years); felony possession of five grams or more of hydromorphone (class B felony, ten years); felony possession of oxycodone (class C felony, five years); felony possession of dihydrocodeinone (class C felony, four years); and felony possession of diazepam (class D felony, four years).

2

On November 24, 2009, Petitioner received from the Board formal notice that he had been denied parole for the following reason: "The Release From Custody At This Time Would Depreciate The Seriousness of The Crime Of Which The Offender Stands Convicted Or Promote Disrespect Of The Law." On December 10, 2009, Petitioner filed with the Board a request for an appeal, to which he attached a lengthy description of alleged "Significant Procedural Errors." In this document, Petitioner argued that he qualified for "custodial parole hearings," citing Howell v. State, 569 S.W.2d 428 (Tenn. 1978), but he did not specifically contest the Board's decision to deny him release on parole. Petitioner asserted only that "the Board was required to schedule a custodial parole hearing," which never occurred.

In a letter dated January 27, 2010, the Board notified Petitioner of its denial of his request for an appeal: "Upon reviewing the [B]oard file and audio recording of the hearing, your allegation of significant procedural error(s) by the Hearings Official(s) was not substantiated." This letter did not address Petitioner's argument regarding custodial parole, concluding: "This disposition is final and there is no further appeal recourse available to you on this matter through the Tennessee Board of Probation and Parole." There is no proof in the record indicating Petitioner notified TDOC of his grievances.

On March 17, 2010, Petitioner filed a document in the Chancery Court of Davidson County, styled "Petition for Common Law Writ of Certiorari," with references to Tennessee Code Annotated sections 27-8-101 and 27-9-101 (2000).[3] Petitioner named as defendants TDOC, the Commissioner of TDOC; the Board; William Parsons, Director, Parole Hearings; Charles Traughber, Chairperson of the Board; and Candice Whisman, Director, Sentence Calculation/Sentence Information Department.[4]

In his petition, which largely replicated the attachment to his request for appeal from the Board, Petitioner argued that Howell entitles him to "custodial parole hearings." Petitioner again did not challenge the Board's decision denying him release from custody on parole—only its alleged failure to consider him for custodial parole. He also challenged the

---

[3] Tennessee Code Annotated section 27-8-101 codifies the common law writ of certiorari: "The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy." Id. Tennessee Code Annotated section 27-9-101 pertains to judicial review of administrative decisions: "Anyone who may be aggrieved by any final order or judgment of any board or commission functioning under the laws of this state may have the order or judgment reviewed by the courts, where not otherwise specifically provided, in the manner provided by this chapter." Id.

[4] All of the individual defendants were sued in their official capacities and are parties to this appeal.

3

method by which TDOC calculated his release eligibility date, arguing that a release eligibility date should be assigned to each sentence, rather than a single release eligibility date for the aggregate sentences.

On April 20, 2010, defendants filed a motion to dismiss the petition for lack of subject matter jurisdiction and for failure to state a claim for which relief may be granted. Tenn. R. Civ. P. 12.02(1), (6). Defendants argued Petitioner had failed to "allege and show" that he sought a petition for a declaratory order from TDOC "prior to filing the court petition," as required by Tennessee Code Annotated section 4-5-225(b).[5]

In opposing the motion to dismiss, Petitioner articulated two grievances: that TDOC aggregated his consecutive sentences into one sentence with a single release eligibility date and that he was denied the "privilege to be heard for custodial and/or cell-parole consideration . . . ."

The Chancellor granted the motion to dismiss on July 23, 2010.[6] Petitioner appealed. The Court of Appeals vacated the judgment and remanded to the chancery court to decide the merits of Petitioner's case. Stewart, 2011 WL 1938280, at *5. The Court of Appeals acknowledged that "one seeking a declaration that his sentence is being improperly calculated for parole purposes must first allow TDOC or its designee an opportunity to address the question." Id. at *3. After reviewing the relevant cases and statutes, however, the Court of Appeals concluded:

> Stewart argues that, after *TDOC denied his appeal*, he had "no other administrative remedy to exhaust; nor, is there any plain, speedy, or adequate administrative remedy to address the issue(s) raised after the . . . decision [to deny in custody parole]." We agree. *Stewart's request for appeal to TDOC* clearly raised the issue of whether the TDOC was calculating his sentence and his eligibility for parole in contravention of Howell. Further, it asked TDOC to act in accordance with Howell and to not base eligibility for parole on his aggregate sentence. *TDOC denied Stewart's request* and told him that the decision was final and that there was no further avenue of appeal. We hold that the request for appeal on the basis of Howell and the letter denying appeal

---

[5] "A declaratory judgment shall not be rendered concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order." Tenn. Code Ann. § 4-5-225(b).

[6] The July 23, 2010 order is quoted, almost in its entirety, by the Court of Appeals in Stewart v. Ray, No. M2010-01808-COA-R3-CV, 2011 WL 1938280, at *1-2 (Tenn. Ct. App. May 19, 2011).

4

satisfied the requirement of requesting a declaratory order from the agency prior to filing what the trial court treated as a declaratory judgment action.

Id. (alterations in original) (emphasis added).[7]

Alternatively, the Court of Appeals held that, "even if the trial court did not have subject matter jurisdiction over the case as a declaratory judgment action, it had subject matter jurisdiction through the writ of certiorari, codified now at Tenn. Code Ann. § 27-9-101 (2000)." Id. at *4. Interpreting his pro se complaint more liberally than the Chancellor had done, the Court of Appeals found that Petitioner had, in fact, sought judicial review of the parole decision itself. Id. In finding that Petitioner had "no other plain, speedy, or adequate remedy," Tenn. Code Ann. § 27-8-101, the Court of Appeals explained: "Stewart did all he could do to secure a *hearing with the TDOC* that would allow for review, and he appealed the matter as high as he could within the administrative agency." Stewart, 2011 WL 1938280, at *4 (emphasis added).[8]

We granted defendants' application for permission to appeal and appointed counsel to represent Petitioner in this Court.[9]

**Standard of Review**

The defendants' motion to dismiss, which the trial court granted, alleged that the trial court lacked subject matter jurisdiction and that the petition failed to state a claim on which relief may be granted. Tenn. R. Civ. P. 12.02(1), (6). Whether a court has subject matter jurisdiction is a question of law that this Court reviews de novo without a presumption of correctness. Redwing v. Catholic Bishop for Diocese of Memphis, ___ S.W.3d ___, No. W2009-00986-SC-R11-CV, 2012 WL 604481, at *5 (Tenn. Feb. 27, 2012). A motion to dismiss for failure to state a claim for relief challenges only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence. Webb v. Nashville Area Habitat for Humanity, Inc., 346 S.W.3d 422, 426 (Tenn. 2011). The motion admits the truth of the factual allegations in the complaint but asserts that the alleged facts fail to establish a basis for relief. Id. "In considering a motion to dismiss, courts must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the

---

[7] In fact, the record shows that (1) the Board—not TDOC—denied Petitioner parole; (2) Petitioner sought an appeal to the Board—not TDOC; and (3) the Board—not TDOC—denied his request.

[8] See supra note 7.

[9] This Court appreciates the capable representation provided Petitioner by appointed counsel Mr. James O. Martin, III, of Bell, Tennent & Frogge, PLLC, in Nashville, Tennessee.

benefit of all reasonable inferences." Webb, 346 S.W.3d at 426 (internal quotation marks omitted). Additionally, courts must give effect to the substance, rather than the form or terminology of a pleading. Abshure v. Methodist Healthcare-Memphis Hosp., 325 S.W.3d 98, 104 (Tenn. 2010). Pleadings prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers. See Carter v. Bell, 279 S.W.3d 560, 568 (Tenn. 2009); Hessmer v. Hessmer, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003); Young v. Barrow, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003). A trial court's legal conclusions regarding the adequacy of a complaint are reviewed de novo without a presumption of correctness. Webb, 346 S.W.3d at 426.

In reviewing a trial court's conclusions regarding the adequacy of the petition at issue in this case, we are also mindful that review under the common law writ of certiorari is limited to determining whether the "inferior tribunal, board, or officer," Tenn. Code Ann. § 27-8-101, exceeded its jurisdiction or acted illegally, arbitrarily, or fraudulently. See, e.g., Arnold v. Tenn. Bd. of Paroles, 956 S.W.2d 478, 480 (Tenn. 1997) (citing Powell v. Parole Eligibility Review Bd., 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994)). The reviewing court does not evaluate the correctness of the decision below, Arnold, 956 S.W.2d at 480, but reviews "the manner in which the decision is reached." Powell, 879 S.W.2d at 873. Thus, dismissal of a petition for common law writ of certiorari for failure to state a claim is appropriate only if the allegations of the petition, taken as true and liberally construed in favor of the petitioner, fail to establish a basis for relief under the narrow grounds applicable to the common law writ of certiorari. See, e.g., Willis v. Tenn. Dep't. of Corr., 113 S.W.3d 706, 712-13 (Tenn. 2003); Woodruff v. Tenn. Dep't. of Corr., No. M2001-00494-COA-R3-CV, 2002 WL 1974138, at *2 (Tenn. Ct. App. Aug. 28, 2002).

**Analysis**

TDOC and the Board are separate entities charged with distinct, but related, duties concerning an inmate's eligibility for parole.[10] Release on parole is a privilege, not a right.[11]

---

[10] Compare Tenn. Code Ann. § 4-3-601 (2011) (creating a "department of correction"), with Tenn. Code Ann. § 40-28-103(a) (2006) (creating a "board of probation and parole" and directing that "the board shall be separate functionally and administratively from any other agency"). Recently enacted legislation transfers certain duties and responsibilities from the Board to TDOC, but does not consolidate these separate entities. See Act of Apr. 11, 2012, ch. 727, 2012 Tenn. Pub. Acts 727. In any event, this legislation becomes effective July 1, 2012, id. at sec. 63, and has no bearing on this appeal.

[11] See, e.g., Tenn. Code Ann. §§ 40-28-117(a) (2006), 40-35-503(b) (2010); State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005) (citations omitted).

6

Not all inmates are eligible for parole.[12] For parole-eligible offenses and offenders, TDOC assigns a release eligibility date—"the earliest date an inmate convicted of a felony is eligible for parole."[13] TDOC has sole authority to calculate an inmate's release eligibility date.[14] A release eligibility date is determined based on offender status, which defines the percentage of the sentence required to be served, less any sentence credits earned and retained by the prisoner. Tenn. Code Ann. § 40-35-501(b)-(f); see also Shorts, 278 S.W.3d at 278 (discussing release eligibility dates). With respect to the release eligibility date of an inmate serving consecutive, determinate sentences imposed pursuant to the 1989 Act, "the periods of ineligibility for release are calculated for each sentence and are added together to determine the release eligibility date for the consecutive sentences." Tenn. Code Ann. § 40-35-501(*l*).

After an inmate's release eligibility date has been calculated, TDOC notifies the Board of the date.[15] The Board must "conduct a hearing within a reasonable time prior to a defendant's release eligibility date to determine a defendant's fitness for parole." Tenn. Code Ann. § 40-35-503(d)(1). The authority to grant or deny parole resides with the Board—not TDOC.[16]

---

[12] Offenders who commit certain enumerated crimes are not eligible for early release on parole. Tenn. Code Ann. § 40-35-501(g), (i)-(k) (2010).

[13] Tenn. Code Ann. § 40-35-501(m); see also Tenn. Code Ann. § 40-35-501(a)(1) ("An inmate shall not be eligible for parole until reaching the inmate's release eligibility date.").

[14] Tenn. Code Ann. § 40-35-501(q) ("Notwithstanding any other provision of the law to the contrary, the department is responsible for calculating the sentence expiration date and the release eligibility date of any felony offender sentenced to the department and any felony offender sentenced to confinement in a local jail or workhouse for one (1) or more years."); see also Tenn. Code Ann. § 40-28-129 (2006) ("Notwithstanding any other provision of the law to the contrary, the department of correction shall be responsible for calculating the sentence expiration date and the earliest release date of any felony offender sentenced to the department of correction and any felony offender sentenced to confinement in a county jail or workhouse for one (1) or more years."); Shorts v. Bartholomew, 278 S.W.3d 268, 278-79 (Tenn. 2009) (discussing earlier, but identical versions of these statutes and concluding that "TDOC is responsible for calculating release eligibility dates for TDOC prisoners, regardless of where they are actually confined").

[15] "The Department of Correction shall notify the Board of an inmate's release eligibility date." Tenn. Comp. R. & Regs. 1100-01-01-.08(1)(b) (2009).

[16] Tenn. Code Ann. §§ 40-28-116(a)(1), -118 (2006), 40-35-503(a); see also Shorts, 278 S.W.3d at 278 ("[W]hether an inmate who becomes eligible for parole is actually released on parole is a decision entrusted to the sole discretion of the [Board], an entity independent of the TDOC.").

An inmate may challenge TDOC's calculation of a release eligibility date or the Board's denial of parole, but the procedure for each challenge differs. Here, Petitioner filed a single "Petition for Common Law Writ of Certiorari" naming both TDOC and the Board, as well as officials of each entity. We first consider whether the trial court erred by dismissing Petitioner's claim against TDOC and TDOC officials.

Petitioner argued in response to the motion to dismiss that TDOC erroneously aggregated his consecutive sentences into a single sentence and assigned a single release eligibility date. An inmate dissatisfied with TDOC's calculation of a release eligibility date may challenge the calculation, but the challenge must comply with the procedures of the UAPA. Bonner v. Tenn. Dep't of Corr., 84 S.W.3d 576, 583 (Tenn. Ct. App. 2001); Watson v. Tenn. Dep't of Corr., 970 S.W.2d 494, 497 (Tenn. Ct. App. 1998). Under the UAPA, an inmate must first petition TDOC for a declaratory order. Tenn. Code Ann. § 4-5-223(a) ("Any affected person may petition an agency for a declaratory order as to the validity or applicability of a statute, rule or order within the primary jurisdiction of the agency."). Upon receipt of the petition, TDOC must *either* convene a contested case hearing and issue a declaratory order *or* refuse to issue a declaratory order. See Tenn. Code Ann. § 4-5-223(a)(1)-(2). An inmate aggrieved by a final decision in a contested case may obtain judicial review under the UAPA. Tenn. Code Ann. §§ 4-5-223(a)(1), -322.

If TDOC chooses not to convene a contested case hearing or refuses to issue a declaratory order,[17] an inmate may obtain judicial review by seeking a declaratory judgment in the Chancery Court of Davidson County. Tenn. Code Ann. §§ 4-5-223(a)(2), -225(a). The UAPA does not permit an inmate to seek a declaratory judgment in the Chancery Court, however, unless the inmate has first petitioned TDOC for a declaratory order and been refused. Tenn. Code Ann. § 4-5-225(b); Bonner, 84 S.W.3d at 583; Watson, 970 S.W.2d at 497; see also Colonial Pipeline Co. v. Morgan, 263 S.W.3d 827, 842 (Tenn. 2008) ("In no uncertain terms, [section 4-5-225(b)] requires a prospective plaintiff to make a request for a declaratory order with an agency before bringing an action for a declaratory judgment in the Chancery Court."). In the absence of proof the inmate sought a declaratory order from TDOC, the Chancery Court lacks jurisdiction over an inmate's declaratory judgment action. Bonner, 84 S.W.3d at 583; Watson, 970 S.W.2d at 497.

Here, the trial court dismissed the petition against TDOC and TDOC officials because Petitioner failed to seek a declaratory order before filing suit. In reversing the trial court's judgment, the Court of Appeals stated that Petitioner "did all he could do to secure a hearing

_____

[17] If an inmate petitions TDOC for a declaratory order, but TDOC fails to set the petition for a contested case hearing within sixty days after receiving it, TDOC "shall be deemed to have denied the petition and to have refused to issue a declaratory order." Tenn. Code Ann. § 4-5-223(c).

8

with the TDOC that would allow for review, and he appealed the matter as high as he could within the administrative agency." Stewart, 2011 WL 1938280, at *4. The record simply does not support this statement. Rather, this statement reflects that the Court of Appeals erroneously equated TDOC with the Board. As already explained, TDOC and the Board are separate entities. While the record establishes that Petitioner administratively appealed the Board's decision denying him parole, Petitioner's administrative appeal to the Board does not satisfy the statutory requirement that Petitioner ask TDOC for a declaratory order before proceeding to court. Conspicuously absent from this record is any proof that Petitioner asked TDOC for a declaratory order. In the absence of such proof, the trial court lacked subject matter jurisdiction of Petitioner's claims against TDOC and TDOC officials. The Court of Appeals erred in reversing the judgment dismissing Petitioner's lawsuit against TDOC and TDOC officials.

We turn next to consider whether the trial court properly dismissed Petitioner's action against the Board and Board officials. The UAPA does not govern inmate challenges to decisions of the Board. Tenn. Code Ann. § 4-5-106(c). Because actions of the Board are deemed "judicial" in nature and "not reviewable if done according to law," Tenn. Code Ann. § 40-28-115(c) (2006 & Supp. 2011), inmates have only the limited right of review afforded by the common law writ of certiorari. Arnold, 956 S.W.2d at 480. As already explained, under the common law writ of certiorari decisions of the Board are reviewed to determine whether the Board exceeded its jurisdiction, or acted illegally, fraudulently, or arbitrarily. Id. (citing Powell, 879 S.W.2d at 873). The intrinsic correctness of the Board's decision is not reviewable under the writ. Id. (citing State ex rel. McMorrough v. Hunt, 192 S.W. 931, 933 (1917)).

Petitioner properly named the Board and Board officials in a petition for common law writ of certiorari,[18] alleging, based on Howell v. State, 569 S.W.2d 428 (Tenn. 1978), that the Board and Board officials erred by failing to consider him for custodial parole when he reached the release eligibility date that was, or should have been, assigned to the first of his

_____

[18] The Board denied Petitioner's administrative appeal on January 27, 2010, and less than sixty days later, Petitioner timely filed a petition for common law writ of certiorari in the Chancery Court of Davidson County. Tennessee Code Annotated section 27-8-106 requires that a petition for writ of certiorari satisfy both "a verification requirement (that the petition be 'sworn to') and a recitation requirement (that the petition 'state that it is the first application for the writ')." State v. L.W., 350 S.W.3d 911, 915 (Tenn. 2011). In civil cases, failure to comply with the verification requirement deprives the court of subject matter jurisdiction. Bd. of Prof'l Responsibility v. Cawood, 330 S.W.3d 608, 609 (Tenn. 2010). However, a petition lacking the requisite recitation, although deficient, does not defeat subject matter jurisdiction. Talley v. Bd. of Prof'l Responsibility, 358 S.W.3d 185, 192-93 (Tenn. 2011). The record reflects that Petitioner satisfied the requirement for verification, but not recitation. Defendants failed to raise this deficiency in their motion to dismiss, and the trial court did not base dismissal of the petition on this ground.

9

consecutive determinate sentences. A close review of the decision in Howell is necessary to determine whether the chancery court erred by concluding that the allegations of the petition fail to state a claim for relief.

In Howell, this Court considered "the troublesome and recurring problem of the proper method of computing parole eligibility in cases wherein consecutive determinate or life sentences are imposed." Id. at 429-30. Howell pleaded guilty on February 20, 1974, to two counts of first degree murder and received consecutive life sentences. Id. at 430. Howell filed a post-conviction petition alleging that he only agreed to plead guilty and accept consecutive life sentences "because his attorney and the trial judge advised him that he would be eligible for parole earlier under two consecutive life sentences than under [] two consecutive thirty-five year sentences." Id. The Court emphasized that no statute provided a method for determining parole eligibility for offenders serving consecutive determinate sentences, id. at 432-33, and that the statute most relevant to the subject contained "no provision for aggregating sentences." Id. at 431. To fill the statutory void, the Court crafted a solution aimed at achieving the purposes of consecutive sentencing while also respecting the State's interest and protecting the rights of defendants. Id. at 433. Specifically, the Court held that a person serving two consecutive determinate sentences imposed pursuant to the law under which Howell was sentenced would become eligible for parole consideration after serving half of the first determinate sentence. Id. at 433-34. The Court explained that an inmate would not be eligible for release on parole, because the second consecutive sentence remained to be served, but the inmate would be eligible for custodial parole after serving half of the first sentence. Id.

Tennessee sentencing law has changed drastically since Howell was decided.[19] Petitioner was not sentenced pursuant to the statutes at issue in Howell. Rather, Petitioner was sentenced pursuant to the 1989 Act, and his parole eligibility is governed by the 1989 Act. Tenn. Code Ann. §§ 40-35-117(a) ("All persons who commit crimes on or after November 1, 1989, shall be tried and sentenced under the provisions of this chapter."), 40-35-501(a)(1) ("A felony sentence to the department of correction or to a local jail or workhouse shall be served according to [the 1989 Act]"); see generally Cantrell v. Easterling, 346 S.W.3d 445, 450-52 (Tenn. 2011); 11 David L. Raybin, Tenn. Practice: Criminal

---

[19] The Tennessee Criminal Sentencing Reform Act of 1982, see Act of Apr. 8, 1982, ch. 868, sec. 1, 1982 Tenn. Pub. Acts 556, 556-85, which replaced jury sentencing with judge sentencing, did not apply to crimes committed prior to July 1, 1982. Tenn. Code Ann. § 40-35-112(a) (repealed 1989). The General Assembly enacted the Criminal Sentencing Reform Act of 1989, repealing and replacing the Criminal Sentencing Reform Act of 1982. See Act of May 24, 1989, ch. 591, sec. 6, 1989 Tenn. Pub. Acts 1169, 1303. However, the 1989 Act also does not apply to crimes committed prior to 1982. Tenn. Code Ann. § 40-35-117(c) ("For all persons who committed crimes prior to July 1, 1982, prior law shall apply and remain in full force and effect in every respect, including, but not limited to, sentencing, parole and probation.").

Practice and Procedure § 32.58 (2011). As already noted, the 1989 Act provides a method for determining the release eligibility date of an inmate serving consecutive determinate sentences. This statute, Tennessee Code Annotated section 40-35-501(*l*), provides: "[T]he periods of ineligibility for release are calculated for each sentence and are added together to determine the release eligibility date for the consecutive sentences." By enacting this statute, the General Assembly, as was its prerogative, filled the statutory void addressed in Howell. See State v. Burdin, 924 S.W.2d 82, 87 (Tenn. 1996) ("The power to define what shall constitute a criminal offense and to assess punishment for a particular crime is vested in the legislature."). Thus, with respect to inmates serving consecutive determinate sentences under the 1989 Act, including Petitioner, section 40-35-501(*l*), not Howell, provides the method for calculating release eligibility dates. Furthermore, the clear and unambiguous language of section 40-35-501(*l*) contemplates that inmates serving consecutive determinate sentences will be assigned a single release eligibility date, making the concept of custodial parole irrelevant.[20]

Because Petitioner is not entitled to multiple release eligibility dates and consideration for custodial parole, his petition alleging that the Board and Board officials deprived him of the privilege to be heard for custodial parole fails to state a claim on which relief may be granted. Accordingly, the trial court properly dismissed the petition for writ of certiorari with respect to the Board and Board officials.[21]

---

[20] Petitioner also argues that Tennessee Code Annotated section 40-20-110(b)(1) entitles him to consideration for custodial parole. This statute provides: "The department of correction shall notify the board of probation and parole *when inmates sentenced to consecutive sentences which require custodial parole consideration* reach parole eligibility on their initial sentences." Tenn. Code Ann. § 40-20-110(b)(1) (2006) (emphasis added). While this statute indicates custodial parole may still be an option for inmates sentenced prior to 1982 and serving consecutive sentences, see Tenn. Code Ann. § 40-35-117(c), it neither expressly entitles Petitioner to consideration for custodial parole nor undermines our conclusion that section 40-35-501(*l*) has rendered Howell inapplicable to inmates serving consecutive determinate sentences under the 1989 Act. We express no opinion on whether custodial parole remains an option for inmates serving other sentences imposed pursuant to the 1989 Act. See Tenn. Op. Att'y Gen. No. 98-089 (Apr. 15, 1998) (discussing the authority of the Board to hold retroactive custodial parole hearings for inmates serving sentences on both a parole-eligible offense and an offense for which there is no parole eligibility).

[21] Petitioner has argued in this Court that the allegations of his petition are legally sufficient to state a claim challenging the Board's decision denying him release on parole. We have scrupulously reviewed the petition, construing the allegations liberally and giving effect to their substance rather than their form, and are constrained to disagree with Petitioner's argument.

**Conclusion**

The judgment of the Court of Appeals is reversed, and the judgment of the chancery court dismissing this lawsuit in its entirety is reinstated. The costs of this appeal are taxed to Danny A. Stewart, for which execution may issue if necessary.

_____
CORNELIA A. CLARK, CHIEF JUSTICE