# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs April 11, 2014

## VINCENT GARRARD v. TENNESSEE DEPARTMENT OF CORRECTION

**Appeal from the Chancery Court for Hickman County**
**No. 12CV4803    James G. Martin, Judge**



## No. M2013-01525-COA-R3-CV -Filed May 8, 2014

This appeal involves the trial court's denial of relief to an inmate based upon a writ of certiorari. The inmate raises several issues regarding violations of the Tennessee Department of Correction Uniform Disciplinary Procedures, as well as basic due process. We affirm in part, vacate in part, and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Vincent Garrard, Only, Tennessee, Pro Se.

Robert E. Cooper, Jr., Attorney General and Reporter; Bill Young, Solicitor General; Jennifer L. Brenner, Civil Rights and Claims Division, for the appellee, State of Tennessee Department of Correction, et al.

## OPINION

### Background

On or around April 16, 2012, an incident occurred at Turney Center Industrial Complex ("the prison"), a division of the Respondent/Appellee Tennessee Department of Correction ("Department of Correction" or "TDOC"). According to later reports, an inmate

was seen attempting to throw a package over the prison fence. The package allegedly contained tobacco. After an investigation, officers at the prison gained information implicating Petitioner/Appellant Vincent T. Garrard, an inmate of the prison. Accordingly, on April 23, 2012, Mr. Garrard was charged with the offense of introduction of tobacco. The charge specifically stated that the charging officer was relying on "information received from confidential sources." The record contains a form in which Mr. Garrard acknowledged his receipt of the charge on April 23, 2012.

A disciplinary hearing occurred on May 2, 2012. A disciplinary hearing report included in the disciplinary record indicates that the case had previously been continued at Mr. Garrard's request, that Mr. Garrard was represented by an inmate advisor, and that the "inmate or inmate advisor had adequate time to prepare defense." Further, the hearing report indicated that Mr. Garrard testified on his own behalf and called one witness, an inmate Davis. According to the hearing report, Ms. Garrard asserted that he was not guilty of the introduction of tobacco because he was asleep at the time the incident allegedly occurred. A Sergeant with the Department of Correction testified against Mr. Garrard regarding the information obtained from the confidential source. The disciplinary board found Mr. Garrard guilty of the charged offense, and imposed a $5.00 fine, a twelve month package restriction, a six month visitation restriction, a ten day "PSG,"[1] and a three month reduction in prisoner sentence reduction credits.

On June 1, 2012, Mr. Garrard filed an appeal to the Commissioner of the Department of Correction, arguing that the confidential information implicating him was false and obtained through force and coercion. Mr. Garrard alleged that this was new evidence that he was not aware of at the time of the hearing. On June 4, 2012, the Commissioner of the Department of Correction affirmed the ruling of the disciplinary board.

On August 3, 2012, Mr. Garrard filed a petition for a writ of certiorari with the Hickman County Chancery Court. In his petition, Mr. Garrard alleged that he did not receive timely notice of the charge against him, that his due process rights were violated, and that the disciplinary board improperly relied on confidential information in the hearing. After an unsuccessful motion to dismiss, the Respondent/Appellee Tennessee Department of Correction ("the State") filed a notice that it did not oppose the petition. As such, the State filed Mr. Garrard's certified disciplinary record with the trial court. The trial court granted Mr. Garrard's petition for a writ of certiorari on January 16, 2013. Both parties subsequently filed briefs. On June 21, 2013, the trial court entered an order dismissing Mr. Garrard's claims, finding that the disciplinary board "did not act illegally, arbitrarily, or exceed its jurisdiction." Mr. Garrard appeals.

---

[1] It is unclear from the record to what this acronym refers.

## Statement of the Issues

As a point of practice, we note first note that Mr. Garrard's brief fails to comply with the Tennessee Rules of Appellate Procedure. Rule 27 of the Tennessee Rules of Appellate Procedure outlines the requirements for appellate briefs to this Court, and provides:

> The brief of the appellant shall contain under appropriate headings and in the order here indicated:
>
> (1) A table of contents, with references to the pages in the brief;
> (2) A table of authorities, including cases (alphabetically arranged), statutes and other authorities cited, with references to the pages in the brief where they are cited;
>
> \* \* \*
>
> (4) A statement of the issues presented for review;
> (5) A statement of the case, indicating briefly the nature of the case, the course of proceedings, and its disposition in the court below;
> (6) A statement of facts, setting forth the facts relevant to the issues presented for review with appropriate references to the record;
> (7) An argument, which may be preceded by a summary of argument, setting forth:
>
> (A) the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and
> (B) for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues);
> (8) A short conclusion, stating the precise relief sought.

Tenn. R. App. P. 27(a).

Mr. Garrard's brief fails in several respects. First, Mr. Garrard's brief contains no

statement of facts or statement of the case. Mr. Garrard's brief also contains no references to the appellate record, no table of authorities, and no statement of the applicable standard of review.[2] Finally, and most egregiously, Mr. Garrard failed to include a statement of the issues presented for review to this Court. It is well-settled that these failures may result in a waiver of the issues on appeal. *See* Tennessee Rule of Appellate Procedure 13(b) ("Review will generally only extend to those issues presented for review."); ***Childress v. Union Realty Co.***, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002) ("Generally, an issue argued in the body of the brief, but not designated as an issue will be considered waived."); ***Owen v. Long Tire***, LLC, No. W2011-01227-COA-R3-CV, 2011 WL 6777014 (Tenn. Ct. App. Dec. 22, 2011) (dismissing appeal for failure to include a table of contents, statement of the issues, statement of the case, references to the appellate record in the statement of the facts, or references to the record to citation to authority in the argument brief); ***Quaites v. University of Tennessee College of Pharmacy***, No. M2011-00923-COA-R3-CV, 2012 WL 172893 (Tenn. Ct. App. 2012) (dismissing appeal for failure to include a statement of the issues, statement of the case, or references to the appellate record). However, we note that Mr. Garrard's reply brief does contain a statement of the facts and a statement of the issue presented for review. Further, both Mr. Garrard's initial brief and his reply brief contain copies of the documents from the record on which he relies.

We are cognizant of the fact that Mr. Garrard is an inmate in a correctional facility and is self-represented in this case. However, it is well-settled that "*pro se* litigants are held to the same procedural and substantive standards to which lawyers must adhere." ***Brown v. Christian Bros. University***, No. W2012-01336-COA-R3-CV, 2013 WL 3982137, at *3 (Tenn. Ct. App. Aug. 5, 2013), *perm. app. denied* (Tenn. Jan. 15, 2014). As explained by this Court:

> Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the *pro se* litigant's adversary. Thus, the courts must not excuse *pro se* litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

***Jackson v. Lanphere***, No. M2010-01401-COA-R3-CV, 2011 WL 3566978, at *3 (Tenn. Ct.

---

[2] The Department of Correction's brief also fails to include any statement as to the standard of review, as required by Rule 27(a)(7)(B) of the Tennessee Rules of Appellate Procedure.

App. Aug.12, 2011) (quoting **Hessmer v. Hessmer**, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003)). In this case, Mr. Garrard failed to adhere to myriad of this Court's procedural rules. Regardless, we will proceed to consider the substantive issue raised in this appeal. However, we caution litigants that we may not be so forgiving in the future.

In his reply brief, Mr. Garrard raises one issue, specifically:

> The trial court did not properly dismiss [Mr. Garrard's] writ of certiorari. Based on the fact that the [Department of Correction] failed to address [Mr. Garrard's] claims that they failed to successfully to show [sic] that they met the basic rights afforded to [Mr. Garrard].

After a thorough review of the record, we affirm in part, vacate in part, and remand for further proceedings.

### Standard of Review

The issues in this case involve the review of a decision by a prison disciplinary board. As explained by the Tennessee Supreme Court:

> The common-law writ of certiorari serves as the proper procedural vehicle through which prisoners may seek review of decisions by prison disciplinary boards, parole eligibility review boards, and other similar administrative tribunals. *See* **Rhoden v. State Dep't of Corr.**, 984 S.W.2d 955, 956 (Tenn. Ct. App.1998) (citing **Bishop v. Conley**, 894 S.W.2d 294 (Tenn. Crim. App. 1994)). By granting the writ, the reviewing court orders the lower tribunal to file its record so that the court can determine whether the petitioner is entitled to relief.

**Willis v. Tennessee Dept. of Correction**, 113 S.W.3d 706, 712 (Tenn. 2003). The Tennessee Supreme Court recently reaffirmed the long-standing principal that the standard of review in a writ of certiorari case is extremely limited:

> The judicial review available under a common-law writ of certiorari is limited to determining whether the entity whose decision is being reviewed (1) exceeded its jurisdiction, (2) followed an unlawful procedure, (3) acted illegally, arbitrarily, or fraudulently, or (4) acted without material evidence to support

-5-

its decision. *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d at 363; *see also Stewart v. Schofield*, 368 S.W.3d 457, 463 (Tenn. 2012). We have explicitly approved the use of the common-law writ of certiorari to provide judicial relief from (1) fundamentally illegal rulings, (2) proceedings inconsistent with essential legal requirements, (3) proceedings that effectively deny parties their day in court, (4) decisions that are beyond the decision-maker's authority, and (5) decisions that involve plain and palpable abuses of discretion. *State v. Lane*, 254 S.W.3d at 355 (quoting *Willis v. Tennessee Dep't of Corr.*, 113 S.W.3d 706, 712 (Tenn. 2003)). However, we have also held that:

> the common law-writ [of certiorari] . . . may not be resorted to for the correction of technical or formal errors, not affecting jurisdiction or power, or for the correction of defects that are not radical, amounting to an illegality that is fundamental, as distinguished from an irregularity.

*State ex rel. McMorrow v. Hunt*, 137 Tenn. 243, 249, 192 S.W. 931, 933 (1917).

A common-law writ of certiorari proceeding does not empower the courts to redetermine the facts found by the entity whose decision is being reviewed. *Tennessee Waste Movers, Inc. v. Loudon Cnty.*, 160 S.W.3d 517, 520 n.2 (Tenn. 2005); *Cooper v. Williamson Cnty. Bd. of Educ.*, 746 S.W.2d 176, 179 (Tenn. 1987). Accordingly, we have repeatedly cautioned that a common-law writ of certiorari does not authorize a reviewing court to evaluate the intrinsic correctness of a governmental entity's decision. *See, e.g., Stewart v. Schofield*, 368 S.W.3d at 465; *Arnold v. Tennessee Bd. of Paroles*, 956 S.W.2d 478, 480 (Tenn.1997). Similarly, we have noted that reviewing courts may not reweigh the evidence or substitute their judgment for the judgment of the entity whose decision is being reviewed. *See, e.g., State v. Lane*, 254 S.W.3d at 355 (quoting *Robinson v. Clement*, 65 S.W.3d at 635); *Harding Acad. v. Metropolitan Gov't of Nashville & Davidson Cnty.*, 222 S.W.3d at 363.

*Heyne v. Nashville Board of Public Education*, 380 S.W.3d 715, 729 (Tenn. 2012). As

succinctly stated by the this Court:

> At the risk of oversimplification, one may say that it is not the correctness of the decision that is subject to judicial review, but the manner in which the decision is reached. If the agency or board has reached its decision in a constitutional or lawful manner, then the decision would not be subject to judicial review.

*Powell v. Parole Eligibility Review Bd.*, 879 S.W.2d 871, 873 (Tenn. Ct. App. 1994). Accordingly, we consider Mr. Garrard's arguments with these limitations in mind.

## Analysis

## Notice

From what we can discern from Mr. Garrard's trial and appellate briefs, he first takes issue with the timeliness of the notice he received regarding the charge against him, citing the Tennessee Department of Correction, Uniform Disciplinary Procedures ("Uniform Disciplinary Procedures").[3] As explained by this Court:

> The Uniform Disciplinary Procedures govern disciplinary actions in the state correctional system. These procedures are intended "'[t]o provide for the fair and impartial determination and resolution of all disciplinary charges placed against inmates.' " *Willis v. Tenn. Dep't of Corr.*, 113 S.W.3d 706, 713 (Tenn. 2003) (quoting TDOC Policy No. 502.01(II)). These procedures are "not intended to create any additional rights for inmates beyond those which are constitutionally required." TDOC Policy No. 502.01(V).

*Himes v. Tennessee Dept. of Correction*, No. M2011-02546-COA-R3-CV, 2012 WL 7170480, at *5 (Tenn. Ct. App. Dec. 6, 2012). According to the Uniform Disciplinary

---

[3] Although Mr. Garrard raised this issue in the trial court, Mr. Garrard does not raise this in his initial brief to this Court. However, the Tennessee Department of Correction's brief addresses this argument in its brief to this Court. In fact, very little in the Department of Correction's brief is actually responsive to Mr. Garrard's initial brief to this Court. For this reason, we have painstakingly combed through the record to determine which issues were presented to the trial court and which issues were presented on appeal so that all of the issues addressed by either party may be appropriately considered by this Court.

Procedures:

> No inmate charged with a disciplinary offense should be required to wait more than seven calendar days for his/her disciplinary hearing to be held, unless the hearing is continued pursuant to Section VI.(J). Failure to comply with this provision may constitute grounds for dismissal of the pending charge.

Tenn. Dep't Corr. Policy 502.01(VI)(A)(6)(b). It is undisputed that Mr. Garrard was provided notice of the charge against him on April 23, 2012. Mr. Garrard argues that this provision was violated, however, because he was given notice of the charge against him more than seven days after the incident allegedly occurred. Specifically, Mr. Garrard asserts that the incident occurred on April 15, 2012, rather than April 16, 2012, making the notice of the charge one day late. From our review of the record, all documents in the record consistently show that the incident in question occurred on April 16, 2012. Other than Mr. Garrard's unsupported assertions, there is simply no evidence in the disciplinary record that the incident occurred on April 15, 2012. Further, the above policy appears to address the timing of the disciplinary hearing, rather than the time in which an inmate is to receive notice of the charge against him. In addition, the record shows that Mr. Garrard himself requested a continuance of the disciplinary hearing. Accordingly, this issue is without merit.

Mr. Garrard also argued in the trial court that the notice he received was inadequate because it did not contain information regarding where the contraband tobacco was found. According to Mr. Garrard, this failure mandates dismissal of the charge, again citing the Uniform Disciplinary Procedures:

> A disciplinary report which fails to adequately state an offense, contains errors, or has not been properly completed shall be dismissed by the board/hearing officer. However, the reporting officer may reinitiate the case by entering a new report . . . that corrects the error(s) contained in the original. . . .

Tenn. Dep't Corr. Policy 502.01(VI)(L)(5)(f)(1).We respectfully disagree that the notice in this case failed to adequately state the offense, contained errors, or was improperly completed.

From our review of the record, the notice to Mr. Garrard stated that:

> On 4-16-2012 Mobile Patrol witnessed an unknown person toss a package over the fence at the TCIX-Main Annex site and run

towards the field and out of sight. After talking to several confidential sources inmate Vincent Garrard . . . has been positively identified as the inmate who picked up the package that was thrown over the fence. The contents of the package contained (4) large bags filled with tobacco. Due to information received from confidential source[,] I am charging Inmate Gerrard [sic] . . . with introduction of tobacco.

Introduction of tobacco is a Class A or B offense which is defined as: "To introduce or attempt to introduce tobacco or related products into a correctional facility." Tenn. Dep't Corr. Policy 502.05(VI)(A)(37). Thus, the notice to Mr. Garrard adequately stated the offense. Further, nothing in the record suggests that the notice contained any errors or was not properly completed. Accordingly, this issue is likewise without merit.

### Confidential Information

Mr. Garrard next argues that the disciplinary board improperly relied on confidential information without properly authenticating that information pursuant to the Uniform Disciplinary Procedures. Respectfully, we disagree. According to the Uniform Disciplinary Procedures:

Whenever confidential information or confidential security sensitive evidence is utilized by the disciplinary hearing officer/chairperson as a basis for its decision, the TDOC Contemporaneous Record of Confidential Informant Reliability, CR-3510, shall be completed to document the factual basis for the disciplinary hearing officer's/chairperson's finding that the informant and/or security sensitive evidence was reliable. At privately managed facilities, the Commissioner's designee shall also review the confidential information and initial the form. This form shall be considered confidential and kept as a non-public access record in an area designated by the Warden.

Tenn. Dep't Corr. Policy 502.01(VI)(L)(4)(g). The disciplinary record in this case contains a "TDOC Contemporaneous Record of Confidential Informant Reliability, CR-3510" form in accordance with the above policy. The CR-3510 form indicates that a prison Sergeant gave a sworn statement regarding the confidential information, indicating that the officer believed that the information was reliable "because the particular informant(s) has/have proved reliable in the past." The form was signed by the disciplinary "Board Chairperson/Hearing Officer. *See* Tenn. Dep't Corr. Policy 502.01(VI)(L)(4)(e) (requiring that the "disciplinary

hearing officer/chairperson" "independently access and verify the reliability of the informant's testimony and/or the confidential security sensitive evidence"). This form, therefore, "document[s] the factual basis for the disciplinary hearing officer's/chairperson's finding that the informant and/or security sensitive evidence was reliable." Tenn. Dep't Corr. Policy 502.01(VI)(L)(4)(g). Accordingly, the disciplinary board properly followed protocol in admitting and considering this evidence.

## Chain of Custody

In his brief to this Court, Mr. Garrard next argues that the disciplinary panel erred in considering evidence regarding the contraband tobacco, without following the appropriate procedure regarding the chain of custody. Mr. Garrard does not dispute that a photograph of the alleged contraband tobacco was admitted at the disciplinary hearing, but argues that the actual contraband must have been admitted, pursuant to the Uniform Disciplinary Procedures. From our review of the record, however, this argument was never presented to the Chancery Court. Arguments not presented to the trial court are waived. *See Correll v. E.I. DuPont de Nemours & Co.*, 207 S.W.3d 751, 757 (Tenn. 2006). Accordingly, we decline to address this issue.

## Due Process

Finally, Mr. Garrard argues that his due process rights were violated by the procedure utilized by the disciplinary board. In addition to the protections afforded by the Uniform Disciplinary Procedures, prisoners entitled to the protections of due process, depending on the circumstances:

> The Fourteenth Amendment's Due Process Clause protects individuals by guaranteeing fair procedure. *Littles v. Campbell*, 97 S.W.3d 568, 572 (Tenn. Ct. App. 2002) (citing *Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)). "'In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.'" *Id.* (quoting *Zinermon*, 494 U.S. at 125). A claim is not actionable unless the State fails to provide due process; thus, we must first determine what process is due, if any, and whether such process has been afforded. *Id.* (citation omitted).
>
> The United States Supreme Court has stated that only

those restraints to a prisoner's liberty interest which impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" are actionable under the Due Process clause. **Sandin v. Conner**, 515 U.S. 472, 484, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). "Once a court determines that the restraints imposed upon the prisoner's liberty are indeed 'atypical' and a 'significant hardship,' the court must next determine what type of process is constitutionally required." **Littles**, 97 S.W.3d at 572. Pursuant to **Wolff v. McDonnell**, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Due Process Clause requires that inmates subject to disciplinary proceedings be afforded: (1) written notice of any charges made against the prisoner at least twenty-four (24) hours before a hearing is held; (2) the opportunity to present witnesses; (3) an impartial tribunal; and (4) a written statement from the tribunal indicating what evidence the factfinder relied upon and the reasons for the disciplinary actions taken."[**Littles**, 97 S.W.3d at 573–74] (citing **Nevills v. S. Cent. Corr. Disciplinary Bd.**, No. M2000-02324-COA-R3-CV, 2001 WL 1117066, at *13 (Tenn. Ct. App. Sept. 25, 2001)).

**Patterson v. Tenn. Dep't of Corr.**, No. W2009-01733-COA-R3-CV, 2010 WL 1565535, at *2 (Tenn. Ct. App. Apr. 20, 2010).

In this case, Mr. Garrard was found guilty of the charge of introduction of tobacco into the prison. Among the penalties the disciplinary board imposed was the loss of three months of Mr. Garrard's prisoner sentence reduction credits. "[T]he loss of previously earned sentence reduction credits has been found to implicate an interest sufficient to invoke due process." **Seals v. Bowlen**, No. M1999-00997-COA-R3-CV, 2001 WL 840271, at *6 (Tenn. Ct. App. July 26, 2001) (citing **Greene v. Tenn. Dep't of Corr.**, No. 0 1A01-9608-CH-00370, 1998 WL 382204, at *3 (Tenn. Ct. App. July 10, 1998) (footnote omitted)). Because Mr. Garrard's liberty interests have been implicated in this case, he was entitled to the due process protections outlined above. See **Himes**, 2012 WL 7170480, at *4 (finding that the loss of sentence reduction credits was sufficient to implicate due process).

In his brief to this Court and to the trial court, Mr. Garrard noted two failures in the disciplinary hearing that denied him due process. First, Mr. Garrard alleges that the disciplinary hearing panel violated his rights by refusing to allow him to call witnesses and to cross-examine the witness who testified against him. As previously noted, due process requires that the inmate be allowed "the opportunity to present witnesses" on his or her own

behalf. ***Littles***, 97 S.W.3d at 573–74. As explained by this Court:

> The Uniform Disciplinary Procedures afford prisoners facing disciplinary charges with a limited right to present exculpatory evidence. Tenn. Dep't Corr. Policy No. 502.01(VI)(L)(4)(c)(6) provides that an inmate who pleads not guilty to a disciplinary offense shall have "[t]he right to present the testimony of relevant witness(es), unless allowing the witness to appear would pose a threat to institutional safety or order." "This policy reflects the United States Supreme Court's conclusion that prisoners charged with disciplinary offenses 'should be allowed to call witnesses and present documentary evidence in [their] defense when permitting [them] to do so will not be unduly hazardous to institutional safety or correctional goals.'" ***Jeffries v. Tenn. Dep't of Corr.***, 108 S.W.3d 862, 874 (Tenn. Ct. App. 2002) (quoting ***Wolff v. McDonnell***, 418 U.S. at 566).

***Himes***, 2012 WL 7170480, at \*5. Thus, with some important limitations, an inmate has the right to present witnesses in his own defense. Here, the administrative record shows that Mr. Garrard was allowed to present a witness in his own defense. Nothing in the disciplinary record indicates that Mr. Garrard attempted to call any other witnesses for his defense, but was denied that right. Under these circumstances, we must conclude that Mr. Garrard has failed to show that the disciplinary hearing panel reached its decision in an unconstitutional or unlawful manner with regard to this issue. *See **Powell***, 879 S.W.2d at 873.

Mr. Garrard next argues that the disciplinary hearing panel violated his due process rights in refusing to allow Mr. Garrard to cross-examine the witness against him. The right to cross-examine opposing witnesses, however, is not mandated by due process in the institutional setting:

> Confrontation and cross-examination present greater hazards to institutional interests. If confrontation and cross-examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. Proceedings would inevitably be longer and tend to unmanageability. These procedures are essential in criminal trials where the accused, if found guilty, may be subjected to the most serious deprivations, ***Pointer v. Texas***, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), or where a person may lose

-12-

his job in society, ***Greene v. McElroy***, 360 U.S. 474, 496–497, 79 S.Ct. 1400, 1413–1414, 3 L.Ed.2d 1377 (1959). But they are not rights universally applicable to all hearings. *See **Arnett v. Kennedy***, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Rules of procedure may be shaped by consideration of the risks of error, ***In re Winship***, 397 U.S. 358, 368, 90 S.Ct. 1068, 1074, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring); ***Arnett v. Kennedy***, . . . 416 U.S., at 171, 94 S.Ct., at 1652 (White, J., concurring in part and dissenting in part), and should also be shaped by the consequences which will follow their adoption. Although some States do seem to allow cross-examination in disciplinary hearings, we are not apprised of the conditions under which the procedure may be curtailed; and it does not appear that confrontation and cross-examination are generally required in this context. We think that the Constitution should not be read to impose the procedure at the present time and that adequate bases for decision in prison disciplinary cases can be arrived at without cross-examination.

***Wolff***, 418 U.S. at 568. Accordingly, Mr. Garrard's due process rights were not violated by the disciplinary hearing panel's alleged refusal to allow Mr. Garrard to cross-examine the witness against him.

We note, however, that although due process does not require an inmate be given the opportunity to cross-examine witnesses, the Uniform Disciplinary Procedures does contain that mandate:

> If an inmate pleads 'not guilty', he/she shall be permitted . . . to cross-examine any witness (except a confidential source) who testified against him/her and to review all adverse documentary evidence (except confidential information).

Tenn. Dep't Corr. Policy 502.01(VI)(L)(4)(c)(3). Accordingly, while the alleged denial of the right to cross-examine was not in violation of due process, it may have been in violation of the Uniform Disciplinary Procedures. According to this Court:

> "[E]ven if a state prisoner is not entitled to due process protections in a disciplinary proceeding, the inmate may nevertheless assert a claim under a common-law writ of certiorari that the prison disciplinary board otherwise acted

illegally or arbitrarily in failing to follow TDOC's Uniform Disciplinary Procedures. ***Irwin v. Tenn. Dep't of Corr.***, 244 S.W.3d 832, 835 (Tenn. Ct. App. Aug. 13, 2007) (citing ***Willis***, 113 S.W.3d at 713).

***Patterson***, 2010 WL 1565535, at *2. However, in order to obtain judicial relief based upon a violation of the Uniform Disciplinary Procedures, the inmate must show that the violation "resulted in substantial prejudice to the inmate." ***Patterson***, 2010 WL 1565535, at *2. As explained by this Court:

> "The inmate may be entitled to relief under a common-law writ of certiorari if he demonstrates that the disciplinary board failed to adhere to the Uniform Disciplinary procedures and that its failure to do so resulted in substantial prejudice to the inmate." [***Irwin***, 244 S.W.3d at 835] (citing ***Gore v. Tenn. Dep't of Corr.,*** 132 S.W.3d 369, 378 (Tenn. Ct. App. 2003); ***Willis***, 113 S.W.3d at 713–14).

***Patterson***, 2010 WL 1565535, at *2. From our review of the record, we must conclude that Mr. Garrard has failed to demonstrate that his inability to cross-examine the witness against him resulted in any prejudice. Consequently, Mr. Garrard has not shown that he is entitled to relief under a common-law writ of certiorari for the disciplinary hearing board's alleged failure to allow Mr. Garrard to cross-examine the Sergeant who testified against him.

Finally, Mr. Garrard asserts that the disciplinary hearing board failed to include in its hearing report "a written statement from the tribunal indicating what evidence the factfinder relied upon and the reasons for the disciplinary actions taken."[4] ***Littles***, 97 S.W.3d at 573–74. As explained by the United States Supreme Court:

> [T]here must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action. . . . Written records of proceedings will thus protect the inmate against collateral consequences based on a misunderstanding of

---

[4] Although the specific argument was not raised in Mr. Garrard's initial appellate brief, he did raise this argument in the trial court. However, counsel for the Department of Correction failed to ever address this argument. Further, Mr. Garrard raised the very broad issue of whether "basic rights [were] afforded to [Mr. Garrard]" in his reply brief to this Court. Accordingly, we have determined that good cause exists to consider this argument. *See* Tenn. R. App. P. 2 (allowing this Court to consider unraised arguments based upon "good cause").

the nature of the original proceeding. Further, as to the disciplinary action itself, the provision for a written record helps to insure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental constitutional rights may have been abridged, will act fairly. Without written records, the inmate will be at a severe disadvantage in propounding his own cause to or defending himself from others. It may be that there will be occasions when personal or institutional safety is so implicated that the statement may properly exclude certain items of evidence, but in that event the statement should indicate the fact of the omission. Otherwise, we perceive no conceivable rehabilitative objective or prospect of prison disruption that can flow from the requirement of these statements.

*Wolff*, 418 U.S. at 565–65 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 2604 (1972)).

The disciplinary record contains a summary of the disciplinary hearing. This summary includes a section wherein the disciplinary hearing members are to include such a written statement. However, this form has not been completed in accordance with the requirements of due process. Specifically, in the portion of the form in which the disciplinary hearing panel is to state its "findings of fact and specific evidence relied on to support those findings," the summary merely notes the portion of the Uniform Disciplinary Procedures that Mr. Garrard is alleged to have violated. Further, in the portion of the form in which the disciplinary hearing panel is to state its "disposition and a statement of the reasons which support[] that decision" the summary merely states the penalty that will be assessed to Mr. Garrard. Nothing in the summary indicates that the disciplinary hearing panel made any findings of fact or offered any of its reasons for its decision. As previously discussed, however, due process requires a "'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 565–65 (quoting *Morrissey,* 408 U.S. at 471). Accordingly, the procedure utilized by the disciplinary hearing board violated Mr. Garrard's due process rights.

The failure of the disciplinary hearing panel to provide a written statement of the evidence relied upon and the reasons supporting its decision is similar to the situation when a trial court fails to make findings of fact and conclusions of law in a bench trial. *See* Tenn. R. Civ. P. 52.01 (requiring findings of fact and conclusions of law in bench trials). In those cases, this Court has held that the appropriate remedy is to remand to the trial court for appropriate findings of fact and conclusions of law. *See **Lake v. Haynes***, No. W2010-00294-

COA-R3-CV, 2011 WL 2361563, at *1 (Tenn. Ct. App. June 9, 2011). While the Court may "soldier on" when faced with a trial court's failure to comply with Rule 52.01 of the Tennessee Rules of Civil Procedure, *see Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *5 (Tenn. Ct. App. Feb. 22, 2013), the failure in this case involves not simply a deviation from a rule of procedure, but a violation Mr. Garrard's due process rights. Accordingly, we are unable "soldier on" in the face of this deficiency. Consequently, the decisions of both the Chancery Court and the disciplinary hearing panel are vacated and this cause is remanded to the disciplinary hearing panel for entry of a "'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action." *Wolff*, 418 U.S. at 565–65 (quoting *Morrissey,* 408 U.S. at 471).

## Conclusion

The judgments of the Hickman County Chancery Court and the Tennessee Department of Correction are affirmed in part, vacated in part, and remanded for all further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are assessed one-half to Appellant, Vincent T. Garrard, who is proceeding *in forma pauperis*, and one-half to Appellee, Tennessee Department of Correction, *et al.*, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE