IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 20, 2023 Session

## DIANE MAURIELLO v. BRANCH BANKING AND TRUST COMPANY

Appeal from the Chancery Court for Campbell County
No. 11-067          Elizabeth C. Asbury, Chancellor

_____

### No. E2023-00098-COA-R3-CV

_____

The plaintiff in this action, alleging mutual mistake, sought rescission and nullification of a promissory note and deed of trust related to the plaintiff's 2005 purchase of multiple parcels of unimproved real property. Upon the defendant bank's counterclaim and motion for summary judgment, and following a hearing in which the plaintiff participated *pro se* after the court denied her motion for continuance, the trial court granted summary judgment in favor of the bank. The court dismissed the plaintiff's complaint with prejudice and awarded a judgment to the bank in the amount of $306,392.14, inclusive of the principal owed on the promissory note, accrued interest at the time of the hearing, reasonable attorney's fees, and expenses. The plaintiff has appealed. Discerning no reversible error, we affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and JOHN W. MCCLARTY, J., joined.

Jordan Long, Tazewell, Tennessee, for the appellant, Diane Mauriello.[1]

W. Morris Kizer, Knoxville, Tennessee, for the appellee, Branch Banking and Trust Company.

_____

[1] In the notice of appeal and the appellant's brief, the appellant's surname is spelled as "Maurielo" with one "l." However, throughout the record, in the final order, and in documents in the record that were personally executed by the appellant, her name is spelled as "Mauriello." We have therefore utilized the latter spelling in this Opinion.

**OPINION**

## I.  Factual and Procedural Background

On May 31, 2005, the plaintiff, Diane Mauriello, a New Jersey resident, purchased title to several parcels of unimproved real property located in Campbell County, Tennessee ("the Property"), from Villages at Norris Lake, LLC ("Villages").  Ms. Mauriello purchased the Property for a total price of $1,015,000.00.  She financed $812,000.00 of the purchase price through a line-of-credit loan from the defendant, Branch Banking and Trust Company ("BB&T"), executing a promissory note ("the Note") secured by a deed of trust.  In June 2007, Ms. Mauriello filed a complaint against Villages and Land Resource Companies, LLC ("Land Resource"), in the United States District Court for the Eastern District of Tennessee, alleging, *inter alia*, that those corporations had misrepresented the value of the Property, had failed to provide promised amenities for lots in the corresponding development, and had failed to honor a commitment to tie individual lots to the LaFollette Utilities sewer system.[2]

Acting through attorney Arthur F. Knight, III, Ms. Mauriello initiated the instant action by filing her complaint in the Campbell County Chancery Court ("trial court") on May 24, 2011, naming BB&T as the defendant[3] and alleging that the Note should be rescinded, nullified, or modified "on the grounds of mutual mistake."  Ms. Mauriello averred that she had purchased the Property "based upon her reliance on multiple false representations by personnel affiliated" with Villages and Land Resource and that in financing her purchase, BB&T had "relied on the same false representations as well as inaccurate appraisals based upon the aforementioned false representations."  She thereby alleged that "her transaction with [BB&T] was based upon a mutual mistake of fact as to the value of the purchased land."  While acknowledging that she had stopped making monthly interest payments on the Note in the fall of 2010, Ms. Mauriello maintained that she had been "forced" to do so because "illness and injuries she suffered made it impossible for her to work."  She further acknowledged that BB&T had initiated foreclosure proceedings set to take place in June 2011.  Ms. Mauriello requested that the court "rescind and nullify" the Note and deed of trust or modify them "in accordance with the [Property's] true value on the grounds of mutual mistake."

---

[2] According to Ms. Mauriello's complaint in the instant action, she subsequently filed an amended complaint in the federal case and prepared for trial set for June 2009, but following a suggestion of bankruptcy filed by the federal case defendants in November 2008, the case was stayed until July 2010. Ms. Mauriello stated that at the time of the instant complaint's filing in 2011, she was in the process of filing further claims against the federal case defendants.

[3] As the trial court noted in its final order, "BB&T is now known as Truist Bank by operation of the merger of BB&T and SunTrust."

BB&T filed a motion to dismiss on June 27, 2011, pursuant to Tennessee Rule of Civil Procedure 12.02(6), asserting that Ms. Mauriello had filed a claim upon which relief could not be granted because "rescission cannot be granted against an innocent third party based on the fraudulent conduct of someone else." BB&T also argued that Ms. Mauriello's alternate request for reformation could not be granted because there was no mutual mistake in the agreement between the parties. BB&T further argued that Ms. Mauriello's claims should be barred by the doctrines of estoppel and laches because she had not filed the complaint within a reasonable time following the original transaction. Ms. Mauriello filed a response objecting to the motion to dismiss on July 26, 2011.

Ms. Mauriello filed an amended complaint on August 10, 2011, adding an alternative allegation that BB&T had "acted in concert" with employees of Villages and Land Resource "to provide [Ms. Mauriello] with a line of credit to purchase [the Property]." She averred that BB&T "either knew or should have known about the planned activities to usurp the development, change the development to grossly devalue the properties, and/or abandon the development as described herein, but issued the line of credit based on [Ms. Mauriello's] then existing financial status." Following a hearing, the trial court entered an order on August 17, 2011, granting Ms. Mauriello's motion to amend her complaint and also granting BB&T's motion to dismiss as to all claims except the one added by the amended complaint.

On September 1, 2011, BB&T filed an answer and counterclaim, denying all substantive allegations against it and requesting a judgment in the total amount of $859,439.36, inclusive of $812,599.99 owed on the principal balance due on the loan, interest to the date of the counterclaim, late charges and fees, and reasonable attorney's fees pursuant to a provision of the Note. BB&T also requested interest accruing on the principal balance of the loan after the date of the counterclaim. Ms. Mauriello filed a reply to the counterclaim on October 25, 2011, with an amended reply filed the same day, again acknowledging that she had ceased making timely payments on the Note in October 2010 but averring that the counterclaim should be dismissed and that she should not be held responsible for BB&T's attorney's fees.

Nearly five years later, following a July 15, 2016 docket sounding, the trial court, noting in an order that only BB&T's counsel had appeared, set the case for a status hearing. On August 2, 2017, the court entered an agreed order allowing Mr. Knight to withdraw as Ms. Mauriello's counsel. Although no documentation of Mr. Knight's re-engagement is the record, it is undisputed that Ms. Mauriello again retained his services at some point.

On August 19, 2021, the trial court issued a notice of trial setting for December 13, 2021, which was signed by counsel for both parties. Upon Mr. Knight's motion, the

trial court subsequently entered an order on November 16, 2021, allowing him to withdraw from representation of Ms. Mauriello a second time. BB&T then filed a motion for continuance on November 24, 2021, noting Mr. Knight's withdrawal and the unavailability of two witnesses whom BB&T intended to call, Shannon Lloyd and Tina Davis, for the December 2021 trial date. BB&T's November 2021 motion to continue is in the record as a supplement to the original technical record. No order granting the motion is in the record, but it appears that the trial court did grant a continuance at that time.

On November 7, 2022, BB&T filed a motion for summary judgment, asserting that in Ms. Mauriello's one remaining claim, she had failed to state any actionable claim against BB&T or allege any wrongdoing on BB&T's part. As in its prior motion to dismiss, BB&T averred that Ms. Mauriello's amended claim alleged no facts upon which rescission, reformation, or modification of the Note and deed of trust could be granted. Reducing the amount of its requested monetary judgment against Ms. Mauriello, BB&T sought an outstanding principal balance on the loan of $135,599.99; accrued interest as of August 25, 2022, in the amount of $125,315.25; additional interest accruing at a rate of $25.48 per diem; and reasonable attorney's fees and expenses totaling $42,808.58. BB&T attached various documents in support of its motion, including loan documents, payment records, and an affidavit executed by its counsel delineating the attorney's fees and expenses. BB&T also filed a "Statement of Material Facts as to which there is No Genuine Issue for Trial."

In a letter dated November 14, 2022, and received by the trial court on November 17, 2022, Ms. Mauriello acknowledged that she had received notice of a hearing on BB&T's motion for summary judgment set for December 12, 2022, and requested a ninety-day "extension" to retain new counsel. Ms. Mauriello stated in part: "This case is not at the point of summary judgment; there are still open issues and disputed facts." However, she did not directly respond to BB&T's motion for summary judgment or its statement of undisputed material facts.

The trial court conducted a hearing on December 12, 2022, with Ms. Mauriello participating *pro se* via telephone. The court began by considering Ms. Mauriello's motion for continuance. Although Ms. Mauriello was not sworn in as a witness, she did speak at length concerning her situation, attempts to contact new counsel, and reasons for desiring a continuance. The trial court ruled from the bench to deny Ms. Mauriello's motion for continuance, noting that the case had been pending for eleven years and stating that as the plaintiff, Ms. Mauriello had a responsibility to prosecute the case. The court instructed Ms. Mauriello that she could participate in the summary judgment hearing via telephone. Following further hearing conducted on the same day, the trial court granted summary judgment in favor of BB&T.

On December 20, 2022, the trial court entered two separate orders, one denying Ms. Mauriello's motion for continuance and one granting BB&T's motion for summary judgment. In the order granting summary judgment, the court noted that Ms. Mauriello had "filed no affidavits or any other papers permitted by the Tennessee Rules of Civil Procedure in opposition to the Motion." The court specifically found:

> Ms. Mauriello does not allege in her complaint or amended complaint any claims against BB&T upon which relief can be granted, and specifically her complaint and her amended complaint do not allege that BB&T committed fraud against her or made any misrepresentations to her, or that BB&T was complicit or acted in concert with the Villages at Norris Lake and Land Resource Company in connection with their alleged fraud and misrepresentations.

> Ms. Mauriello is and has been in default in the payment of her promissory note payable to BB&T ("the Note"), and on the Note Ms. Mauriello owes BB&T the principal amount of $135,599.99 and accrued interest thereon through December 12, 2022 (the date of the hearing on the Motion) in the amount of $127,983.57. Interest will accrue thereafter in the per diem amount of $24.48.

> In the Note and the deed of trust securing the payment of the Note Ms. Mauriello agreed to pay the costs of collection, including attorney's fees.

> BB&T retained counsel to foreclose on the deeds of trust securing the payment of the Note, to defend this action brought by Ms. Mauriello, and to assert its counterclaim against Ms. Mauriello in this action, for which BB&T has been billed attorney's fees in the amount of $36,446.85 for services rendered and $6,361.73 for expenses incurred, for a total of $42,808.58, which the Court finds to be both reasonable and necessary, and for which Ms. Mauriello is liable to BB&T, in addition to the principal and interest Ms. Mauriello owes BB&T on the Note.

(Paragraph numbering omitted.) The court awarded a total monetary judgment to BB&T in the amount of $306,392.14, plus post-judgment interest as stated above. Acting through her appellate counsel, Ms. Mauriello timely appealed.

## II. Issue Presented

Ms. Mauriello presents one issue on appeal, which we have restated as follows:

Whether the trial court abused its discretion by denying Mauriello's motion for continuance to retain new counsel.

## III. Standard of Review

Although the trial court granted summary judgment in favor of BB&T in this action, the sole issue raised by Ms. Mauriello on appeal concerns the trial court's denial of her motion for continuance prior to the summary judgment hearing. A trial court's grant or denial of a motion for continuance is reviewed under an abuse of discretion standard. *See Blake v. Plus Mark, Inc.*, 952 S.W.2d 413, 415 (Tenn. 1997). As our Supreme Court has explained:

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to propriety of the decision made." *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000). A trial court abuses its discretion only when it "applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining." *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998).

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). We review questions of law *de novo* with no presumption of correctness. *See Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000).

Although Ms. Mauriello is represented by counsel on appeal, we recognize that she was without counsel during the continuance hearing at issue here, as well as during the summary judgment hearing that immediately followed. We note that in reviewing pleadings, such as Ms. Mauriello's *pro se* motion to continue, we "must give effect to the substance, rather than the form or terminology of a pleading." *Stewart v. Schofield*, 368 S.W.3d 457, 462 (Tenn. 2012) (citing *Abshure v. Methodist Healthcare-Memphis Hosp.*, 325 S.W.3d 98, 104 (Tenn. 2010)). We note also that pleadings "prepared by pro se litigants untrained in the law should be measured by less stringent standards than those applied to pleadings prepared by lawyers." *Stewart*, 368 S.W.3d at 462 (citing *Carter v. Bell*, 279 S.W.3d 560, 568 (Tenn. 2009); *Hessmer v. Hessmer*, 138 S.W.3d 901, 903

(Tenn. Ct. App. 2003); *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003)). Parties proceeding without benefit of counsel are "entitled to fair and equal treatment by the courts," but we "must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct. App. 2003).

IV.  Denial of Motion for Continuance

Ms. Mauriello contends that the trial court abused its discretion by denying her motion for continuance to allow her time to retain new counsel.  BB&T responds that the trial court properly denied the motion for continuance, asserting particularly that there is no absolute right to counsel in a civil matter and that Ms. Mauriello had let nearly thirteen months lapse between her former counsel's withdrawal and the summary judgment hearing without retaining new counsel.  Upon careful review of the record and applicable authorities, we discern no abuse of discretion in the trial court's denial of Ms. Mauriello's motion for continuance.

Regarding the grant or denial of a motion for continuance, this Court has explained:

> Continuances are governed by Tennessee Code Annotated 20-7-101 (2009), which provides in pertinent part that continuances "may always be granted by the court, upon good cause shown, in any stage of the action." A ruling on a motion for continuance is a matter of discretion for the trial court and will not be disturbed absent a clear showing of abuse of that discretion.  *See Tipton v. Smith*, 593 S.W.2d 298, 301 (Tenn. Ct. App. 1979).  Decisions regarding the granting or denial of a continuance are fact-specific and should be viewed in the context of all existing circumstances present at the time of the party's request for continuance.  *See Nagarajan v. Terry*, 151 S.W.3d 166, 172 (Tenn. Ct. App. 2003).  In order to prove that a requested continuance is justified, the party requesting the continuance "must supply some 'strong excuse' for postponing the trial date." *Howell v. Ryerkerk*, 372 S.W.3d 576, 580-81 (Tenn. Ct. App. 2012) (quoting *Barber & McMurray, Inc. v. Top-Flite Dev. Corp. Inc.*, 720 S.W.2d 469, 471 (Tenn. Ct. App. 1986)).  When considering a motion for continuance, the following factors are relevant to the trial court's decision:  "'(1) the length of time the proceeding has been pending, (2) the reason for the continuance, (3) the diligence of the party seeking the continuance, and (4) the prejudice to the requesting party if the continuance is not granted.'"  *Howell*, 372 S.W.3d at 580-81 (quoting *Nagarajan*, 151 S.W.3d at 172).  Although this Court rarely interferes with a trial court's decision regarding the granting or

denial of continuances, "we are constrained to do so where it is made to appear . . . that the ends of justice probably require it." *Clark v. Jarrett*, 61 Tenn. 467 (1873); *see also Morrow v. Sneed*, 114 S.W. 201, 201 (Tenn. 1908) ("[F]orcing [the plaintiff] to trial under the circumstances worked a hardship, and was not warranted by any equitable consideration or legal necessity."); *cf. Turtle Creek Apartments v. Polk*, 958 S.W.2d 789, 791-92 (Tenn. Ct. App 1997) (affirming denial of a continuance under a distinguishable factual situation from that in *Morrow* ).

*Tidwell v. Burkes*, No. M2015-01270-COA-R3-CV, 2016 WL 3771553, at *5 (Tenn. Ct. App. July 8, 2016). In a civil matter such as the instant action, there is no absolute right to counsel. *See Bell v. Todd*, 206 S.W.3d 86, 92 (Tenn. Ct. App. 2005) ("With the exception of certain proceedings involving the termination of parental rights, it is now well-settled that there is no absolute right to counsel in a civil trial.").

Although Ms. Mauriello did not testify under oath, she did, in representing herself during the hearing telephonically, provide a statement and respond to the trial court's questions. When the court questioned Ms. Mauriello regarding what she had done to attempt to retain counsel since Mr. Knight's second withdrawal from the case nearly thirteen months prior to the hearing, the following exchange ensued:

Ms. Mauriello: Well, the last I found was that in 2021, I received an e-mail from [BB&T's counsel] and I was in contact with [the Clerk and Master] and I understood that the case was taken off the docket. There's been very little communication with me in the last even 13 years. There was a moratorium ten years and then there was three years of COVID, and I was deposed in 2019. I'm still trying to get a copy of my deposition. I think Tina Davis and Ms. Lloyd, Shannon Lloyd was deposed sometime around 2021. I don't—there's definitely not—we're at no point near a summary judgment especially not in the favor of BB&T.

Trial Court: What are you talking about regarding a ten-year moratorium?

Ms. Mauriello: Well, for about ten years after 2008, I was told by Arthur Knight that there was a ten-year moratorium. Nothing went on in my case except for a few filings. That was when I broke my left tibial plateau in 2010.

- 8 -

But after that, nothing went on until I received a phone call, and then I was supposed to get deposed in 2019. And then nothing happened for another two years until I received another phone call that there was a deposition scheduled for Tina Davis or Shannon Lloyd and they were trying to search for her. Her father was ill. So there's been terrible starts and stops. And I don't believe that the BB&T case has been managed properly by Arthur Knight, and he was my attorney at the time.

Trial Court: Anything else you want to tell me regarding your request for a new date?

Ms. Mauriello: Well, yes. I've had some serious family issues with very close family members, so – excuse me. That's going to take awhile to resolve. And I'm disabled myself, so I'm going to need some time.

During BB&T's counsel's statement, he explained to the court that Ms. Mauriello had left him a voicemail message on December 2, 2021, soon after Mr. Knight's second withdrawal from the case, wherein she stated that "she needed to get a lawyer and she would be engaging with Mr. Knight or trying to find a lawyer." On rebuttal, Ms. Mauriello responded:

So when [BB&T's counsel] in 2021, November 2021 sent me an e-mail and said that the case was being withdrawn from the docket, I didn't know what to do with that. I didn't have an attorney at that time. And yes, at that time, I was trying to look for an attorney and I came up with the same kind of situation where, you know, ten or [eleven] years have come, people didn't want to get involved. And always, Your Honor, it's around Thanksgiving and Christmastime. It's almost impossible for somebody to – an attorney to come onto a case at this time and really want to dive into it because of the holidays.

I really do feel that this time around it should come to closure, but this time around, I will give it my full attention with an attorney that really has his heart into it. And there's no way that there are disputed facts in this case, and that's what summary judgment is. There are disputed cases – disputed facts in this case. I know what I said and I have all my notes from

- 9 -

my deposition. I can't imagine that any deposition from anybody at BB&T bank agreed with me, so there are disputed facts.

In addition to that, what I did in the last year, and maybe I should have said this before, was that there's a bunch of sales representatives and engineers that I worked with there, but they were all under the same, you know, keep quiet, get Mauriello into a line of credit, we need to close this schedule A. But I kept their numbers, their phone numbers and I did call a bunch of them. These are people that actually got paid out as employees for having situations not like mine, but were not given back pay, or bonuses, or commissions, and in fact, some my commissions. But I spoke with them in the last year and I said, what do you remember about this? And they said, Diane, you have no idea. And if you need us, we will write an affidavit, we will come, we will be witnesses for you. So that's my plan.

In its order denying Ms. Mauriello's motion for continuance, the trial court stated that it had considered the entire record and the statements of Ms. Mauriello and BB&T's counsel made during the hearing. The court found the motion for continuance to be "not well taken" for the "reasons stated on the record." The transcript reflects that after hearing the parties' statements during the hearing, the trial court ruled orally from the bench:

[Ms. Mauriello], I'm going to deny your motion for continuance. You're the plaintiff, you have the responsibility to prosecute your case and move it forward. It's now 11 years old plus, so we are going to go ahead and hear [BB&T's] motion for summary judgment.

The record supports the trial court's findings concerning the duration of the proceedings and Ms. Mauriello's failure to prosecute this action.

Regarding the factors to be considered when granting or denying a motion for continuance, the trial court emphasized the length of time the proceeding had been pending and Ms. Mauriello's lack of diligence in prosecuting the action. *See Tidwell*, 2016 WL 3771553, at *5. The complaint was initially filed in this matter in 2011. Following Ms. Mauriello's October 2011 reply to BB&T's counterclaim, nothing was filed until the trial court conducted a docket sounding nearly five years later. It was approximately another five years, inclusive of Ms. Mauriello's counsel's first withdrawal from the case and subsequent reengagement, before the trial court issued a notice setting the case for trial in December 2021. However, upon Ms. Mauriello's counsel's motion, the trial court again entered an order allowing her counsel to withdraw on November 16, 2021. Upon BB&T's November 24, 2021 motion to continue, which was based in part

on the withdrawal of Ms. Mauriello's counsel, the trial court continued the summary judgment hearing.

In Ms. Mauriello's letter dated November 14, 2022, which the trial court treated as a motion to continue, Ms. Mauriello stated that several days earlier, she had received notice of a summary judgment hearing set for December 12, 2022. She explained that she had attempted to call the trial court on November 11, 2022, the Veteran's Day holiday. Even though a copy of the hearing notice is not in the record, we can glean from Ms. Mauriello's letter that she received notice of the hearing no later than November 10, 2022, thirty-two days prior to the date of the hearing. Importantly, Ms. Mauriello knew nearly thirteen months before the hearing, from the date of her counsel's second withdrawal, that she was without counsel to defend against BB&T's summary judgment motion or otherwise prosecute the complaint she had filed eleven years before. Ms. Mauriello acknowledged that throughout the interim year, she had pursued some discovery she felt important to her case by telephoning potential witnesses herself, an action indicating that she was well aware that the case was still pending. We agree with the trial court that the length of time this matter had been pending and Ms. Mauriello's lack of diligence in retaining new counsel weighed against granting her a continuance.

Additionally, we do not find that the other two factors—the reason for the continuance request and the potential prejudice to Ms. Mauriello—weigh significantly in favor of granting a continuance. *See Tidwell*, 2016 WL 3771553, at \*5. Although Ms. Mauriello set forth a number of perceived obstacles to her prosecuting the case, including her belief that there was a ten-year moratorium on cases brought by out-of-state plaintiffs during the COVID-19 pandemic, some attorneys' conflicts with the case, her own injuries, and problems within her family, she presented no evidence to document that any of these obstacles had entirely prevented her from obtaining counsel in the thirteen months prior to the summary judgment hearing.

Regarding potential prejudice to Ms. Mauriello, we note that she was initially the plaintiff in this action. Although Ms. Mauriello was faced with defending herself against BB&T's counterclaim, it was her responsibility to prosecute her claim against BB&T. *See Hodges v. Attorney Gen.*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000) (explaining that trial courts have the "express authority to dismiss cases for failure to prosecute or to comply with the Tennessee Rules of Civil Procedure or the orders of the court") (citing Tenn. R. Civ. P. 37.02(C); Tenn. R. Civ. P. 41.02(1)) (additional citation omitted). Concerning BB&T's counterclaim, Ms. Mauriello acknowledged that she had defaulted on the Note and at no time presented any evidence or offer of proof to the contrary.

In support of her argument on appeal, Ms. Mauriello relies on this Court's decision in *Fidelity-Phenix Fire Ins. Co. v. Oliver*, 152 S.W.2d 254 (Tenn. Ct. App.

1941).  We find *Fidelity-Phenix* to be highly factually distinguishable from the instant action.  The trial court in *Fidelity-Phenix* had partially granted the defendant's initial motion for continuance, setting the case for trial sooner than the defendant had requested.  *Fidelity-Phenix*, 152 S.W.2d at 256.  The defendant's counsel than withdrew from representation one week prior to the reset trial date.  *Id.*  The defendant retained other counsel two days following the original counsel's withdrawal, but when the new counsel contacted the plaintiff's counsel, he learned that the trial court had already granted a default judgment in favor of the plaintiff before the time allotted for the continuance had expired.  *Id.* at 256-57.  On appeal, this Court set aside the default judgment, holding that "the judgment below should be set aside because it was entered before the expiration of the continuance."  *Id.* at 257.

Here, Ms. Mauriello relies on the following postulate stated by the *Fidelity-Phenix* Court:  "Where it is shown that defendant's attorney had withdrawn from the case, it is the duty of the court to continue the case a sufficient length of time to permit defendant to employ other counsel and to enable the new counsel to investigate the case and make defense."  *Id.* at 258.  However, in contrast to the defendant in *Fidelity-Phenix*, Ms. Mauriello had nearly thirteen months following the withdrawal of her counsel to retain new counsel, and, of course, no default judgment had been entered before the expiration of a prior continuance in this case.

Having carefully considered the totality of the circumstances, we discern no abuse of discretion in the trial court's denial of Ms. Mauriello's motion for continuance.  *See, e.g.*, *Tipton v. Smith*, 593 S.W.2d 298, 301 (Tenn. Ct. App. 1979) ("Without a clear showing of abuse on the part of the Trial Court, we are not prepared to disturb the proper exercise of its discretion in denying the Motion for a Continuance.").  We note that Ms. Mauriello has not raised an issue on appeal regarding the trial court's grant of summary judgment in favor of BB&T and has thereby waived any review of the trial court's grant of summary judgment.  *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review.").

V.  Conclusion

For the foregoing reasons, we affirm the trial court's judgment in its entirety.  This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs below.  Costs on appeal are taxed to the appellant, Diane Mauriello.

s/ Thomas R. Frierson, II_____
THOMAS R. FRIERSON, II, JUDGE

- 12 -